GUSTAV UECKER, APPELLANT, V. GUSTAV KOEHN AND EMIL KOEHN, APPELLEES.

1. **Evidence Conflicting.** When the evidence is conflicting and it is apparent that some of the witnesses—the defendants—were mistaken, and that their testimony was disregarded by the court, the judgment will not be set aside as being against the weight of evidence.

2. **Infancy:** MORTGAGE BY INFANT. Where an infant purchases real estate, and receives a conveyance thereof, and at the same time executes a mortgage upon the land to secure notes given for the purchase money, such mortgage is voidable only, not void; and when, on reaching his majority, he sells and conveys such real estate, he thereby confirms the mortgage.

APPEAL from the district court for Pierce county. Tried below before TIFFANY, J.

*Wigton & Whitham,* for appellant.

*H. C. Brome* and *N. A. Rainbolt,* for appellees.

MAXWELL, CH. J.

December 1, 1885, the plaintiff filed in the district court of Pierce county his petition, stating his cause of action to be: "That on the 19th day of January, 1884, the defendant, Gustav Koehn, was the owner and in possession of the south half of the north-east quarter of section thirty-three, and the south half of the north-west quarter of sec-

tion thirty-four, of township twenty-five north, of range one west of the sixth principal meridian, in Pierce county, Nebraska; that on the said 19th day of January, 1884, said defendant, Gustav Koehn, sold and conveyed said premises by his deed of general warranty to defendant, Emil Koehn; that in consideration of and for said sale of said premises, defendant Emil Koehn assumed the payment of certain mortgage liens then resting thereon, to-wit: one lien in favor of ———— for $————, and one lien in favor of ————, for $————; and in addition thereto and as a further consideration for said premises, said defendant, Emil Koehn, executed and delivered to said defendant, Gustav Koehn, on the same day, twelve promissory notes in writing of that date, each of said promissory notes being for the sum of $208.33, and falling due respectively one, two, three, four, five, six, seven, eight, nine, ten, eleven, and twelve years from said date, and all of said notes bearing interest at the rate of ten per cent per annum from the date thereof, payable annually; and the said defendant, Emil Koehn, did on said date and to secure the payment of said notes execute and deliver to said defendant, Gustav Koehn, a mortgage deed upon said premises, witnessed and acknowledged in the manner provided by law, said mortgage being given for the express purpose of securing the payment of the portion of the purchase price of said premises represented by said notes, to-wit: the sum of $2,500.00, together with such interest and costs as might legally become due thereon, said notes being particularly referred to and described in said mortgage deed; that by the terms of said mortgage deed it was provided that 'If the said Emil Koehn shall well and truly pay or cause to be paid the said sums of money in said notes mentioned, with the interest thereon, according to the tenor and effect of said notes, then these presents shall be null and void, but if said sum of money or any part thereof or any interest thereon is not paid when the same is due, then in

that case the whole of said sum and interest shall become due by the terms of this indenture; or if the taxes and assessments of every nature which are or may be assessed or levied against said premises, and not paid at the time when the same are by law made due and payable, then in like manner the whole of said sum shall immediately become due and payable, and upon forfeiture of this mortgage, or in case of default in any of the payments herein provided, the said Gustav Koehn shall be entitled to the immediate possession of said premises;' that afterwards, and on the 9th day of August, 1884, the defendant, Gustav Koehn, did for a valuable consideration sell and transfer, by endorsement to this plaintiff, seven of the above described promissory notes, to-wit: the notes falling due respectively one, two, three, four, five, six, and seven years after the 19th day of January, 1884; that at the time plaintiff purchased said notes, said defendant, Gustav Koehn, fraudulently and falsely represented and stated to plaintiff that the mortgage hereinbefore referred to, and by which the payment of said notes was secured, was duly recorded in the office of the county clerk of Pierce county, Nebraska; that plaintiff, relying upon said statements with reference to the recording of said mortgage deed, and believing the same to be true, was induced to and did purchase said notes; that said mortgage deed was not recorded in the office of said county clerk, nor has the same ever been recorded in the office of said county clerk, all of which Gustav Koehn well knew when he made said statements, and at the time he sold and delivered said notes to plaintiff.

"After the transfer and sale of said notes said defendant, Gustav Koehn, did, without the knowledge or consent of this plaintiff, deliver said mortgage deed to said defendant, Emil Koehn, and said mortgage was thereupon, and without knowledge or consent of this plaintiff, wholly destroyed; that plaintiff has no remedy in the premises except such as may be afforded by the interposition of this court.

36

"Wherefore plaintiff prays that, plaintiff be adjudged and decreed to have a first mortgage lien upon said premises for the amount then due or to become due on said promissory notes, and that it be further decreed that if said defendants or either of them shall fail to pay the amount of said notes, with interest thereon, according to the tenor thereof, or any part thereof when the same shall become due and payable, then and in that event plaintiff may and shall be entitled to foreclose said mortgage as in other cases by law provided for the foreclosure of mortgages, and for such other relief as may be just and equitable."

Gustav Koehn, in his answer, "admits that on the 19th day of January, 1884, he was the owner of the land described in plaintiff's petition; that on said day he conveyed said premises by his deed of general warranty to defendant, Emil Koehn; that as a part of the consideration for said conveyance said Emil Koehn executed and delivered to this defendant on said day the promissory notes described in plaintiff's petition, and to secure their payment executed and delivered to this defendant the mortgage deed described in plaintiff's petition; that said mortgage deed was never recorded or filed for record in the office of the county clerk of Pierce county, Nebraska, or anywhere.

"Denies each and every allegation in plaintiff's amended petition not herein admitted to be true.

"Alleges that on or about the 8th day of April, 1884, and before plaintiff obtained possession of any of said notes, and while all the notes described in plaintiff's amended petition were owned by and in possession of this defendant, this defendant, for good, sufficient, and valuable consideration, endorsed in blank all of said notes and returned and redelivered to defendant Emil Koehn all of said notes and said mortgage deed, with the intent thereby to release, cancel, and annul all of said promissory notes and said mortgage deed, and the lien, if any there was, created by said mortgage deed, and defendant Emil Koehn

accepted the redelivery of said notes and mortgage deed with the same intent. This defendant has not, since the said redelivery of said notes and since the month of April, 1884, been the owner of said notes or any of them, nor has this defendant since April, 1884, had any right or any authority to sell or transfer said notes, or any of them, to any one.

"On the 22d day of April, 1884, defendant Emil Koehn delivered said promissory notes, endorsed in blank as above alleged, to this defendant for safe keeping only, subject at all times to the order of said Emil Koehn.

"On or about the 9th day of August, 1884, plaintiff obtained possession of said seven promissory notes especially mentioned in plaintiff's petition, but gave no consideration whatever for said seven notes or for the possession of said seven notes. Plaintiff knew when he obtained possession of said notes that the said notes belonged to defendant Emil Koehn, and had been canceled, and that this defendant had no authority to give or transfer to plaintiff any right, title, or interest in said notes."

Emil Koehn, in his answer, admits the purchase of the land in question, and the execution and delivery of the notes and mortgage ; but alleges that "in April, 1884, said notes and mortgage were canceled by Gustav Koehn and redelivered to him, but that they were left in the possession of said Gustav Koehn; that on the 9th day of August, 1884, and while the said notes were in the possession of said Gustav Koehn for safe keeping only, plaintiff obtained from said Gustav Koehn, wrongfully and without any consideration therefor, the possession of said seven promissory notes, and still retains possession of the same. This defendant never authorized said Gustav Koehn or any person to deliver said seven notes or any of them to plaintiff or to allow plaintiff to obtain possession of said notes. Plaintiff knew when he got possession of said notes that this defendant was the owner of said notes and that said

notes had been canceled and said Gustav Koehn had no right or authority to deliver said notes or any of them to plaintiff.

"On or about the 15th day of August, 1884, this defendant demanded of plaintiff the possession of said seven notes, but plaintiff then refused and still refuses to deliver said notes or any of them to this defendant.

"The plaintiff is wholly insolvent."

The plaintiff in his reply denies the new matter stated in the answers of the defendants, and alleges that after Emil Koehn became of age he ratified and confirmed said notes and mortgage by selling the land in question for which they were given.

On the trial of the cause the court below rendered the following decree:

"That on the 19th day of January, 1884, the defendant, Gustav Koehn, was the owner and in possession of the south half of the north-east quarter of section thirty-three, and the south half of the north-west quarter of section thirty-four, in township twenty-five north, of range one west of the sixth principal meridian, in Pierce county, Nebraska. That on the said 19th day of January, 1884, said defendant, Gustav Koehn, sold and conveyed said premises by his deed of general warranty to said defendant, Emil Koehn. That in consideration of and for said sale of said premises, said defendant, Emil Koehn, executed and delivered to said defendant, Gustav Koehn, on said 19th day of January, 1884, twelve promissory notes, each of said promissory notes being for the sum of $208.33, and falling due respectively one, two, three, four, five, six, seven, eight, nine, ten, eleven, and twelve years from date, all of said notes bearing interest at the rate of ten per cent per annum from the date thereof, payable annually ; and the said defendant, Emil Koehn, did, on said date and to secure the payment of said notes, execute and deliver to said defendant, Gustav Koehn, a mortgage deed upon said premises

signed, witnessed, and acknowledged in the manner provided by law, said mortgage being given for the express purpose of securing the payment of the purchase price of said premises, represented by said notes, to-wit: the sum of $2,500, together with such interests and costs as might legally become due thereon. That by the terms of said mortgage deed it was provided ' that if the said Emil Koehn shall well and truly pay or cause to be paid the said sums of money in said notes mentioned, with the interests thereon, according to the tenor and effect of said notes, then these presents shall be null and void; but if said sums of money or any part thereof or any interest thereon is not paid when the same is due, then in that case the whole of said sum and interest shall become due by the terms of this indenture, or if the taxes and assessments of every nature which are or may be assessed or levied against said premises are not paid at the time when the same are by law made due and payable, then in like manner the whole of said sum shall immediately become due and payable, and upon forfeiture of this mortgage or in case of default in any of the payments herein provided, the said Gustav Koehn shall be entitled to the immediate possession of said premises.'

"That afterwards and on the 9th day of August, 1884, the defendant, Gustav Koehn, did for a valuable consideration sell and transfer by endorsements six of the above described promissory notes, to-wit: the notes falling due respectively one, two, three, four, five, and six years after the 19th day of January, 1884. That at the time plaintiff purchased said notes, the defendant, Gustav Koehn, represented and stated to him that said mortgage deed was duly recorded in the office of the county clerk of said Pierce county. That plaintiff relied upon said statements with reference to the recording of said mortgage deed, and believed that said mortgage was so recorded at the time of said purchase. Said mortgage deed was not recorded in the office of said county clerk nor has the same ever been recorded in the office of said Pierce county.

"That said mortgage deed was at the time of the com-
mencement of this action, and now is, a valid subsisting lien
upon the above described premises for the amount due or
to become due on said several promissory notes with the
interests and costs accruing thereon, and that plaintiff is
entitled to enforce said lien and foreclose said mortgage in
the same manner as he might do were said mortgage deed
duly recorded.    The court further finds generally upon the
issues joined herein for plaintiff, to all of which findings
the defendants at the time excepted.

"It is therefore considered, adjudged, and decreed by the
court that the plaintiff, Gustav Uecker, have a first mort-
gage lien upon the above described real estate, to-wit:

"The south half of the north-east quarter of section
thirty-three, and the south half of the north-west quarter
of section thirty-four, in township twenty-five north, of
range one west, for the amount now due or that may here-
after become due upon said several promissory notes, and
in default of payment thereof, said plaintiff be and is here-
by authorized to foreclose said mortgage lien in the manner
provided by law for the foreclosure of mortgages."

The defendants appeal.

Two questions are presented by the record. *First,* were
the notes and mortgage above described actually canceled
and redelivered to Emil Koehn in April, 1884? *Second,*
if not so canceled, does the proof show sufficient ratifica-
tion after Emil Koehn became of age to justify the court
in enforcing the contract against him?

The testimony shows that in July and August, 1884,
Gustav Koehn was in the employ of Gustav Uecker; that
during that time he purchased from Uecker a half interest
in certain real estate, shown by the following contract:

"NORFOLK, Nebraska, August 9th, 1884.

This agreement made this day witnesseth that for and in
consideration of twelve hundred and fifty dollars in hand
paid by Gustav Koehn to said Gustav Uecker, the said

Gustav Uecker has agreed and does agree to convey to said
Gustav Koehn by warranty deed one undivided half inter-
est in and to the saloon property on Main street, including
the bowling alley, stables, and all buildings, said property
being free from taxes and all incumbrances excepting two
mortgages of $500 each on which interest is paid up, said
property being parts of lots 4 and 5, of block 1, of Mathew-
son's addition to the town of Norfolk.

In presence of                    GUS. UECKER.
AUGUSTUS SATTLER."

This contract was drawn by one August Sattler, a notary
public, who, in the previous January, had drawn the notes
and mortgage in question. He testifies in substance that
the parties came to his office and stated that they had made
a trade of some property and desired to have the contract
put in writing, and also that Mr. Koehn turned over
$1,250 in notes. Sattler inquired of Koehn if these were
the same notes that were secured by mortgage, and he an-
swered that they were. Mr. Sattler then desired the mort-
gage to make the assignment on the back of the mortgage.
Koehn stated that the mortgage was at his brother's
place. He appears to have conveyed the impression that
the mortgage was recorded. The testimony also shows
that Uecker wanted a formal assignment of the mortgage,
but Sattler seems to have advised him to wait until Koehn
brought the mortgage in order that the assignment might
be made on that. But as Koehn failed to procure the mort-
gage to make the assignment thereon, he executed the fol-
lowing assignment :

"Know all men by these presents that I, Gustav Koehn,
in consideration of fifteen hundred dollars to me paid by
Gustav Uecker, have granted, bargained, and sold, and by
these presents do grant, bargain, and sell to Gustav Uecker,
his heirs and assigns, a certain deed of mortgage from
Emil Koehn to Gustav Koehn, of the south half of the
north-east quarter of section thirty-three (33), and the south

half of the north-west quarter of section thirty-four (34), township twenty-five (25) north, of range one west, in Pierce county, Nebraska—said mortgage deed is recorded in book —, page —, one of the land records of Pierce county to be found at the county clerk's office— together with seven notes of two hundred and eight and $\frac{33}{100}$ dollars each, due respectively in 1, 2, 3, 4, 5, 6, and 7 years from date, being part of the original purchase price debt of said premises for the securing of which said mortgage deed was given.

In presence of                         GUSTAV KOEHN.

    AUGUSTUS SATTLER.

" STATE OF NEBRASKA, }
    MADISON COUNTY. }

                         Before me, Augustus Sattler, a notary public in and for said county, personally appeared above named Gustav Koehn, who is known to me personally to be the identical person whose name is affixed to within, grantor, and acknowledged the same to be his free act and deed.

    Witness my hand and seal this 29th day of August, 1884.

{ Madison County }            AUGUSTUS SATTLER,
  NOTARIAL SEAL. }               Notary Public."
{   Nebraska.   }

The testimony on the part of the defendants tends to show the following facts: That during the month of April, 1884, a new arrangement was entered into between Gustav Koehn and Emil Koehn, whereby the price of the land was to be reduced to $2,000, and new non-negotiable notes, unsecured by mortgage, taken in place of the twelve heretofore referred to. Both of the defendants swear positively that that agreement was consummated; they fail, however, to explain satisfactorily why the old notes and mortgage were preserved if they were canceled, or why the new notes, which they allege were to be given, were not executed. This arrangement is said to have taken place in

April, and the transfer by Gustav Koehn of the notes and mortgage in question was made in the following August, and the defendant, Emil Koehn, when spoken to about the first of September, 1884, says, "I simply told him (the plaintiff) I was a minor and wouldn't pay, and the notes and mortgage belonged to me. I never did ask him to give them back to me." It also appears that some time during the fall of 1884 the plaintiff procured a pony for Emil Koehn to ride from Norfolk to the residence of his brother, August Koehn, in Pierce county, and procure the mortgage in question, and that he rode to his brother's but did not bring the mortgage, his excuse being that "August had it and wouldn't give it up." When we compare the contradictory statements of the brothers we find that there is a want of directness and. consistency which casts suspicion upon it. The testimony of Gustav Koehn is directly impeached upon important points by the assignment of the mortgage made by him on August 29th, 1884. There are other points in which there is a direct contradiction and a want of consistency in the defendant's testimony, to which it is unnecessary to refer. In our view the court below was fully justified in disregarding such testimony and finding for the plaintiff.

2. Does the proof show sufficient ratification, after Emil Koehn became of age, to justify the court in enforcing the contract against him? The decisions upon an infant's liability after he reaches his majority, on a contract made by him during infancy, are directly in conflict.

In *Proctor v. Sears*, 4 Allen, 95, it was held by the supreme court of Massachusetts that when an infant had made a promissory note, and after majority he admitted the debt and promised to pay the same, it was not sufficient, as a mere acknowledgment, would not have the effect to make the obligation valid.

In 2 Kent's Com., 237, it is said : " The books appear to leave the question in some obscurity, when and to what

extent a positive act on the part of the infant is requisite."

In *Henry v. Root*, 33 N. Y., 545, it is said : "I think that the course of decision in this state authorizes us to assume that the narrow and stringent rule, formerly enunciated, that to establish the contract, when made in infancy, there must be a precise and positive promise to pay the particular debt after attaining majority, is not sustained by the more modern decisions."

In *Zouch v. Parsons*, 3 Burrows, 1794, it was held that a conveyance by a lease and release executed by an infant without livery of seizin was voidable only ; Lord Mansfield cites Bro. Abr. to prove that the delivery of a deed cannot be void but only voidable; and he adds : "There is no difference in this respect between feoffments and deeds which convey an interest."

In *Conroe v. Birdsall*, 1 John. Cas., 127, it was held that the bond of an infant, which takes effect by delivery the same as other deeds, was only voidable, and this rule was affirmed in *Jackson v. Todd*, 6 John., 257 ; *Jackson v. Carpenter*, 11 John., 539 ; *Roof v. Stafford*, 7 Cow., 179.

The question was before this court in *Kleffel v. Bullock*, 8 Neb., 336. That was an action for goods furnished and labor performed, the balance claimed to be due being $66.90. Kleffel offered to confess judgment for $40 with costs then accrued ; this was not accepted. A trial was had and judgment rendered for a less sum than $40, and the costs, which amounted to a very large sum (more than $400), were taxed to Bullock. Upon his coming of age he refused to avail himself of the judgment, and the court held that as no guardian had been chosen for him he was not liable for the costs. It is said, page 344 : "From analogy to the cases of the ratification of the voidable acts of infants after becoming of full age, we think it clear that if, after reaching his majority, he had either assented to judgment on the verdict or taken a single step in the further prosecution of the action,

all the privileges of infancy would thereby have been fully waived, and he would have been bound by the action of the court. But the record shows that at the very first opportunity after he reached the age of twenty-one years, he disclaimed all benefit from what had been done in the case, and in the most unequivocal manner denied the jurisdiction of the court to proceed further."

In *Philpot v. Sandwich M'fg Co.*, 18 Neb., 54, it was held that contracts of an infant other than for necessaries were voidable only, and upon coming of age he had the right to affirm or avoid in his discretion; and in *Ward v. Laverty*, 19 Neb., 431, and *O'Brien v. Gaslin*, 20 Neb., 352, it was held that an infant becoming of age must disaffirm a deed within a reasonable time or be barred of the right.

These cases seem to be based upon sound principles. The contract is merely conditional that the infant shall not disaffirm after becoming of age. The law, however, is to be used as a shield—as a means by which he may be protected against inequitable bargains; it is not designed as a means of enabling him to rob others by procuring and retaining their property without paying for it. The principles of justice apply to an infant as well as an adult; therefore if he purchases real estate and receives a deed therefor, and to secure the consideration he executes a mortgage upon such land, and after coming of age sells the real estate as his own, his plea of the invalidity of the mortgage will be unavailing. That is, he cannot confirm that part of the transaction which is beneficial to him and repudiate that which imposes an obligation.

This rule was very carefully considered in *Philpot v. Sandwich Mf'g Co.*, *supra*; and it was held in that case that if an infant purchased personal property and gave his promissory note therefor, he cannot, upon arriving at the age of twenty-one years, retain the property and plead infancy as a defense to the note. This, we think,

is the correct rule.    See also *Delano v. Blake,* 11  Wend., 85; *Jones v. Phœnix Bank,* 4 Seld., 228 ; *Kitchen v. Lee,* 11  Paige, 107 ; *Lynde v. Budd,* 2  Id., 191; *Deason v. Boyd,* 1 Dana, 45 ; *Cheshire v.  Barrett,* 4  McCord, 241 ; *Ottman v. Moak,* 3 Sandf. Ch., 431.

The plaintiff is entitled therefore to have the mortgage duly established and recorded in the proper records of Pierce county.    The value of the property does not appear in this record, and the question of the personal liability of Emil Koehn does not arise in the case.

3.    An attempt was made by the proof to show a partial rescission of the contract between Gustav Koehn and the plaintiff; no issue of that kind is made in the pleadings, and we cannot consider it in this collateral proceeding. There is no error in the record and the judgment of the court below is affirmed.

JUDGMENT AFFIRMED.

THE other judges concur.