FIRST NATIONAL BANK OF WYMORE, APPELLANT, V. ADOLPH GUENTHER, APPELLEE.

FILED JANUARY 19, 1934. No. 28750.

*J. A. McGuire,* for appellant.

*Hubka & Hubka, contra.*

Heard before GOOD, EBERLY and DAY, JJ., and BLACK-LEDGE and RYAN, District Judges.

GOOD, J.

This is an action in replevin. Plaintiff claimed a special ownership by virtue of a chattel mortgage on the property replevied. Defendant Adolph Guenther answered, denying the validity of the chattel mortgage and asserting that it was without consideration. His wife, Cora Guenther, and son, Walter. Guenther, intervened and claimed title and right of possession to a quantity of the corn that was taken under the writ. A trial of the issues to a jury resulted in a verdict and judgment thereon in favor of defendant and interveners. Plaintiff has appealed.

Respecting many of the questions presented, the evidence is sharply conflicting. The rule is well recognized that this court will not interfere with the verdict of a jury, based on conflicting evidence, in a law action unless it is manifestly wrong. The verdict of the jury requires this court to take that view of the evidence most favorable to the defendant and interveners.

The record discloses the following facts: In 1930 defendant owned a farm of 160 acres, which was encumbered to the extent of $15,000. He was indebted to the plaintiff, which held a chattel mortgage upon most of his personal property, in a sum slightly in excess of $3,000. In January, 1931, defendant exchanged the home farm for another farm, hereinafter referred to as the Odell farm, title to the latter being taken in the name of his wife, Cora Guenther. For the purpose of trade, the home farm was valued at $20,000, with encumbrance of $15,000, and, for the same purpose, the Odell farm was valued at $16,000 and encumbered for $11,000. In March, after this exchange, Mrs. Guenther, by written lease, leased the Odell farm to her son Walter for a period of one year,

at a rental of two-fifths of the crop grown on the leased premises.

Shortly after Mrs. Guenther acquired title to this farm, plaintiff's cashier called upon the Guenthers and requested them to give to plaintiff a second mortgage upon the Odell farm, to secure the note which was then secured by the chattel mortgage above mentioned. Defendant and his wife testify that it was the understanding and agreement that, if they would execute the second mortgage on the real estate, plaintiff was to release and discharge the chattel mortgage, and after they had executed the real estate mortgage, defendant requested the surrender of the chattel mortgage; that plaintiff's cashier represented to them that it would be better for them to leave the mortgage standing of record, as it would protect defendant from the claims of other creditors, but with the understanding that the mortgage was, in fact, released. Some months later, when the note, which was secured by the real estate mortgage, had become due, plaintiff's cashier again called upon defendant and asked him to renew the chattel mortgage. Defendant then referred to the fact that the mortgage was extinguished, but was advised by the cashier that it was to his interest to have the mortgage appear to have been renewed and a matter of record, to continue to protect him against the claims of other creditors, and upon the understanding that it was for that purpose only, he executed a new chattel mortgage, which is the one that forms the basis of this action. Defendant further testifies that he did not read the instrument, but relied upon plaintiff's cashier, and did not know that he had inserted in that mortgage a description of the corn growing upon the Odell farm. The evidence further shows that neither of the interveners had ever authorized the defendant to mortgage the corn on the Odell farm; nor did they know that he had done so until within two or three days before this action was begun. It is plainly evident that, if the corn grown on the Odell farm was the property of interveners, defendant could

not, without their consent, encumber it by a chattel mortgage.

Defendant and his wife, after the exchange of farms, continued to reside on the home farm as tenants, while Walter moved to the Odell farm, several miles distant, where he put in a crop and raised 120 to 125 acres of corn. The record shows that 1,115 bushels of corn, raised by him, were taken under the writ of replevin.

Plaintiff first complains of the refusal of the court to give an instruction that the lease from Cora Guenther to Walter Guenther was void because of the latter's minority. The record shows that he lacked four or five months of attaining his majority at the time the lease was executed. However, the rule of law is quite well settled in this jurisdiction, and we think in most jurisdictions, that the contract of a minor for other than necessaries is not void but voidable at his option after attaining his majority. *Philpot v. Sandwich Mfg. Co.*, 18 Neb. 54; *Ward v. Laverty*, 19 Neb. 429; *O'Brien v. Gaslin*, 20 Neb. 347; *Uecker v. Koehn*, 21 Neb. 559; *Englebert v. Troxell*, 40 Neb. 195; *Krbel v. Krbel*, 84 Neb. 160. It is the general rule that if he does not desire to be bound he must, within a reasonable time after attaining his majority, disaffirm the contract. In the instant case, he did not disaffirm, but, on the contrary, has affirmed, the contract after attaining his majority and is bound thereby. The court rightly refused the instruction requested by plaintiff.

Plaintiff complains that the court erred in two instructions relative to the interest of Cora Guenther and Walter Guenther in the corn grown on the Odell farm, in which he told the jury that Mrs. Guenther's interest, if they found for her, would be three-fifths, and Walter's interest two-fifths, of the corn taken from that farm. It is clear that the court simply transposed the relative proportions. It should have been two-fifths to Cora and three-fifths to Walter, but, in another instruction defining the issues, the court gave the correct proportions, and the jury in their verdict found in accordance with the

issues raised by the pleadings and the facts disclosed by the evidence. Plaintiff asserts that, because of this mistake of the court, the verdict is contrary to the law, as given to the jury by the court's instructions. Technically, this is correct, but, in any event, it is not harmful to the plaintiff. If the corn, grown on the Odell farm and taken under the writ, belonged to the two interveners, it was immaterial to plaintiff whether it went to one or the other of the interveners. Plaintiff was not harmed by the instruction. Harmless error in the instructions of the court is not ground for reversal of the judgment.

Plaintiff suggests on oral argument that the verdict is not supported by the evidence, in that the evidence indicates that 200 bushels of corn were taken under the writ in excess of that for which the jury found the plaintiff should account. We fail to see why plaintiff should complain. If it received 200 bushels of corn more than it was required to account for in the action, it was to its advantage and not to its harm.

With respect to the rights between plaintiff and defendant as to the other property taken under the writ, as we have above indicated, the evidence was in direct and irreconcilable conflict, but the jury were the triers of fact and, under the circumstances, their finding is conclusive upon this court, although it might, had it been the trier of fact, have found differently. A chattel mortgage may be discharged by substituting a real estate mortgage as security for the debt, if the parties so agree.

Plaintiff argues several propositions of law with respect to transfers between husband and wife, apparently upon the theory that the title to the Odell farm, taken in the name of intervener Cora Guenther, was fraudulent. It must be observed that no issue was raised in the pleadings upon that question. Plaintiff knew of the transfer and knew the property was in Mrs. Guenther's name when it took the mortgage; in fact, the officers of the bank, or some of them, drafted the papers for the conveyance and exchange of properties. The evidence, how-

ever, clearly shows that, although the home farm was valued, for trading purposes, at $20,000, it was worth little, if any, more than the encumbrance against it. It was their homestead and was not subject to fraudulent alienation. If the husband had transferred that property directly to his wife, the conveyance could not have been attacked as fraudulent, because homestead property is not subject to fraudulent alienation. The cases cited and relied upon have relation to actions in the nature of creditors' bills, directly attacking the conveyances as in fraud of creditors. No such action is here involved.

We find no error in the record prejudicial to plaintiff. Judgment

AFFIRMED.