676

No. 37,564

In re the Estate of Joseph C. Koellen, Deceased; WILLIAM WESTER-
MAN, Special Administrator; JOHN H. WILLE, Executor of the Es-
tate of Joseph C. Koellen, Deceased, *Appellee,* v. ANTHONY H.
LAMPE and BLANCHE A. LAMPE, *Appellants.*

(208 P. 2d 595)

Opin-
ion filed July 9, 1949.

*Guy Lamer,* of Iola, argued the cause, and *Owen Samuel,* of Emporia, was
with him on the briefs for the appellants.

*Emmet A. Blaes,* of Wichita, argued the cause, and *E. E. Lamb,* of Yates
Center, and *W. D. Jochems, J. Wirth Sargent, Roetzel Jochems, Robert G.*

*Braden* and *S. C. Durbin,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This appeal arises from proceedings to set aside judgments. The relief prayed for was granted and the aggrieved parties appeal.

In order that the contentions presented by the appellants be understood, it is necessary that a statement be made.

Under date of April 30, 1941, one Joseph C. Koellen made his last will and testament under which he appointed John H. Wille to be executor. Under date of January 28, 1943, Koellen made a contract with Anthony H. Lampe and Blanche A. Lampe for care and maintenance. This contract is later referred to in more detail. For convenience this document is hereafter referred to as the Lampe will. On March 10, 1943, Koellen died and shortly thereafter Wille presented the will of April 30, 1941, for probate, and the Lampes presented their contract of January 28, 1943, on the theory it contained a testamentary disposition to them of all of Koellen's property and was in legal effect his will. Wille prevailed in the probate court and in the district court on appeal. The Lampes appealed to this court, where it was held that the Lampe will was good as a will. For a more detailed statement see our opinion filed January 25, 1947, and reported as *In re Estate of Koellen,* 162 Kan. 395, 176 P. 2d 544. Under date of March 25, 1947, the district court entered judgment in accordance with our mandate and on May 13, 1947, the probate court admitted the Lampe will as the last will of Koellen.

Wille had continued to act as executor under the original appointment and at some undisclosed date prior to the admission of the Lampe will to probate had filed a final settlement, asked for his discharge and for an allowance for his attorney's fees and such an order was made from which the Lampes appealed to the district court. On the day that appeal was to be heard in the district court Wille asked for a continuance, stating that he desired to file a petition and a motion to set aside the judgment admitting the Lampe will to probate on the ground that judgment was procured through fraud. That appeal has never been determined.

Thereafter on December 6, 1947, Wille filed his petition in the probate court to vacate and set aside the judgment of that court admitting the Lampe will to probate on the ground its admission had

been procured by the fraud of Lampes. Briefly stated, for the matter is mentioned more fully later, it was alleged that Lampes offered and procured admission to probate of a spurious and forged document, and not of the contract actually made by Koellen on January 28, 1943. The Lampes filed a motion to strike the Wille petition on the ground the court was without jurisdiction, and on other grounds later incorporated in their answer, or in the alternative that the petition be made more definite and certain. This motion was denied and they filed an answer denying the commission of any fraudulent acts; alleged that the matters and things set forth in the petition had been fully adjudicated in the district court and the supreme court and were *res judicata;* and that Wille, by filing his final settlement and getting judgment in the probate court for his fees and allowances was estopped from further questioning any of the orders or judgments made in the cause. They further pleaded at length that if there was fraud, which they denied, the issue was before the probate and district courts in the proceedings formerly had and the court was without jurisdiction to hear the matter presently presented. The probate court certified the matters thus presented to the district court for determination. It is stated in the abstract that a similar proceeding was also commenced and filed directly in the district court, and that it and the certified proceeding were tried as one. The pleadings in the district court proceeding are not set forth in the abstract and we can only assume they were like those in the probate court.

A summary is made of the evidence. In a preliminary way it may be noted that the instrument here referred to is the Lampe will which had been admitted to probate on May 13, 1947.

Guatney, whose name appears as a witness to the will, testified that he had never affixed his signature to any other instrument except the one in question. He further stated that he signed the Lampe will. He wrote a series of signatures and his attention was called to a loop on the capital "G" of his last name and that in writing it his pen traveled in a clockwise direction. He was then handed other paper and directed to write his name and asked to reverse the direction of the loop and after trying that a number of times responded, "I don't write a 'G' that way."

Beatty, the other witness, testified he had signed only one instrument on January 28, 1943. The abstract does not disclose he identified his signature, although in the briefs that is so stated.

Cochran qualified as a handwriting expert, and testified he had examined admitted signatures of Guatney and Beatty; that the signatures of Guatney and Beatty on the will were traced forgeries. He also produced photographs showing the enlarged signature of Guatney from which it could be concluded that the loop on the capital "G" was made in an anticlockwise direction and not as Guatney himself wrote.

Harold Forbes testified he was an attorney practicing at Eureka and that on March 10, 1943, Anthony H. Lampe had called at his office and presented a document which contained signatures of Anthony H. Lampe, Mrs. Lampe, Joseph C. Koellen, Guatney and Beatty, and employed him. The Lampes objected to Forbes' testimony for the reason it involved the relationship of attorney and client and was privileged. Forbes stated he did not know what his duty to the court was, if his evidence was privileged he wanted to claim privilege and if it was his duty to testify he wanted to testify. He stated that his secretary had made copies of the document submitted to him by Lampe and produced one of the copies. He stated he had not compared the copy with the original. He said that after studying the document he concluded he could not succeed for Lampe and when Lampe came in he so advised him and returned Lampe's document to him. Two or three weeks later Lampe returned with a purported original instrument, similar to that first shown him except that it had a few additions which would take it out of the category of a contract and attempt to place it in the category of a will and he asked Lampe where he had secured the instrument which was so obviously different and Lampe told him he had had it made. Lampe wanted to hire him to present the last document, the witness declined employment, and Lampe left. The witness further testified that when he read the opinion of this court above referred to after its publication he learned that the document last shown him by Lampe had been ordered admitted to probate and that he then notified counsel for Wille and counsel for Lampes of the facts in his possession. Other details of his extended examination and cross-examination need not be detailed. Lampes' demurrer to this evidence was overruled and they offered evidence in defense which need not be reviewed further than to note Lampe's testimony that there never was but one will of January 23, 1943, and that was the one admitted to probate. His version of his visit to Forbes' office and what occurred between them was not credited by the trial court and will not be detailed.

As a result of the hearing the trial court, under date of August 10, 1948, made and filed long and detailed findings of fact. No good purpose is to be served by setting them out—it is sufficient to say the issues of fact were resolved favorably to Wille. The court concluded as a matter of law that it had jurisdiction by certification from the probate court and as a proceeding brought to vacate a judgment in accordance with G. S. 1935, 60-3007, and also as a petition for a new trial on the ground of newly discovered evidence in accordance with G. S. 1935, 60-3005; that the Lampe will was not the last will of Koellen, was neither executed or attested by suscribing witnesses as required by law and was never entitled to be admitted to record and to probate, and that the judgment of the district court of March 25, 1947, and the judgment of the probate court of May 13, 1947, should be vacated on account of the fraud practiced by the Lampes in obtaining those judgments, and that a journal entry of judgment in accord should be prepared and submitted to the court. On August 11, 1948, the Lampes filed their motion for a new trial and also their motion that the trial court set aside its findings of fact and conclusions of law and substitute therefor findings and conclusions requested by them. Both of these motions were denied on October 19, 1948, and on that day the Lampes served their notice of appeal to this court and the same was duly perfected.

The executor objects to any consideration of the appeal contending that, in proceedings such as were had, there is no code provision for a motion for a new trial; that therefore the motion for a new trial did not extend the time for appeal from the judgment, and the appeal having been perfected over two months after date of the judgment it was too late and this court is without jurisdiction. Without elaboration, we are of opinion that the trial of the proceeding involved trial of issues of fact and that the motion for a new trial, insofar as it challenged trial errors, was proper, and that the appeal should be considered as to such matters.

We shall first take note of contentions presented by the Lampes concerning matters not properly raised by their motion for a new trial.

If we understand the Lampes correctly, they contend that, in view of our opinion and judgment when the matter was decided here on January 25, 1947, as above detailed, any proceeding to set aside the judgments must have been commenced in this court. That contention is not good. Under G. S. 1947 Supp. 59-2213, a judgment of the

probate court may be vacated as provided by G. S. 1935, 60-3016. That section makes other sections of the code of civil procedure pertaining to the vacation of judgments applicable to all courts of record of this state, and includes the probate court (G. S. 1935, 20-1101; G. S. 1947 Supp. 59-301) and a judgment of the district court may be vacated under G. S. 1935, 60-3007. Without again reviewing the pleadings in the proceedings, it may be said there is no question that the probate court in the one instance, and the district court in the other, had jurisdiction to entertain the proceedings to vacate the judgments attacked.

The Lampes complain that the trial court erred in ruling on their motion to strike the petition or in the alternative to make its allegations more definite and certain. This ruling, even if erroneous, was not a trial error, and the appeal from the judgment not having been perfected within two months from the date of the judgment was not subject to review. (G. S. 1947 Supp. 60-3309 and 60-3314a.)

Lampes' contentions that (1) the controversy presented was *res judicata* and (2) Wille by filing a final settlement had made an election of remedies and was estopped to maintain the proceedings, both present questions of law, as to which the motion for a new trial did not serve the purpose of extending time for appeal. The appeal came too late to permit a review of these contentions. Nevertheless we have examined the contentions made and hold they cannot be sustained.

We shall now consider the Lampe contention that the trial court erred in finding that the judgments should be set aside on the ground of fraud and that the witnesses' signatures were spurious. It is contended that much of the evidence received as to the signatures of the witnesses Guatney and Beatty was before the court when the Lampe will was first admitted, and that the only new testimony was that of Forbes. Ignoring the fact that the facts testified to by Forbes were not then known to Wille, and that it was newly discovered evidence, Lampes argue that on the original hearing for probate of the Lampe will, the question of its execution and the sufficiency of proof of the signature of Guatney and Beatty was determined; that the Forbes testimony could and should have been produced at that time but that considered as new evidence, if any fraud was proved, it was intrinsic and not extrinsic, and insufficient to support the judgment. While it would seem the question was much more one of law than of fact, the answer seems

clear for either one of two reasons. First, it is clear that if Forbes' evidence was competent, a question later considered, it was clearly newly discovered evidence and warranted the relief granted without determining whether the fraud disclosed was intrinsic or extrinsic. Second, we think the evidence disclosed extrinsic fraud. Lampe's action in suppressing the document originally executed by Koellen and offering for probate the spurious, forged document had the effect of preventing a fair presentation of the issue, rather than a fair determination of it (*Eaton v. Koontz,* 138 Kan. 267, 25 P. 2d 351). And as bearing on correction of judgments for fraud perpetrated in obtaining them, see *Huls v. Gafford Lumber & Grain Co.,* 120 Kan. 209, 243 Pac. 306.

The Lampes, under two headings, contend the trial court erred in refusing to make findings of fact and conclusions of law requested by them, in refusing to set aside the findings and conclusions made and in rendering judgment against them. No recital of evidence to support any particular finding of fact is necessary. Had the trial court believed Lampes' version, it would undoubtedly have adopted the findings of fact requested by them. That it did not do so is not error. Our examination discloses evidence to support the findings of fact made. The conclusions of law made thereon are proper, as was the judgment rendered.

It is also contended by the Lampes that Forbes was an incompetent witness and that it was error for the trial court to admit and consider his testimony. They direct our attention to G. S. 1935, 60-2805, which provides, in substance, that an attorney shall be incompetent to testify concerning any communication made to him by his client in that relation without the client's consent and directing attention to *State v. Buffington,* 20 Kan. 599, *State v. White,* 19 Kan. 445, *Tays v. Carr,* 37 Kan. 141, 14 Pac. 456, and saying "numerous cases have established this as an inexorable rule" argue that no circumstance can arise whereby Forbes could testify without Lampes' consent. It also contended the testimony was otherwise insufficient because Forbes personally did not make the copy of the first document given him by Mr. Lampe. Answering this last contention first it may be if that were all the testimony the contention might be good, but Forbes testified that he could remember definitely that one document was in the form of an agreement and the other was in the form of a last will and testament. And neither can his testimony of what Lampe told him

be ignored. The real question is whether Forbes was a competent witness. The statute relied on by Lampes is a legislative recognition of a rule of the common law to which exceptions were and are recognized, even though some states refuse to recognize the exceptions. See annotation on "Attorney-Client privileges as affected by wrongful or criminal character of contemplated acts or course of conduct," 125 A. L. R. 508. Although the privileged communications dealt with there were not between attorney and client, in *State v. Wilcox*, 90 Kan. 80, 89, 132 Pac. 982, 9 A. L. R. 1091, this court recognized an exception in cases between attorney and client where it was said that the existence of an unlawful purpose prevents the privilege from attaching. In *Emerson v. Indemnity Association*, 105 Kan. 242, 182 Pac. 647, it was held:

"Good-faith communications between attorney and client, relating to the best method of protecting the client's interests, are privileged; and the rule that privilege may not be urged respecting communications relating to perpetration of fraud is limited, ordinarily, to cases of actual fraud, involving moral turpitude." (Syl. ¶ 5.)

In our opinion the evidence of Forbes was competent. If believed, and it was, Lampe was guilty of an actual fraud involving moral turpitude. If a person may consult an attorney and learn from the attorney there is serious defect in some instrument of writing on which he must rely to maintain his action, and then cause another document which eliminates the defect to be forged and show it to the attorney who refuses to further represent him, and then retain other counsel to represent him, however innocently, and attempt to maintain an action on such forged instrument, he endeavors to perpetrate a fraud not only on his adversary but upon the court, and if the matter be challenged, he may not, through the device of the statute, close the mouth of one whose very suggestion of defect in the original instrument gave rise to his nefarious conduct, and thus permit himself to succeed. There was no prejudicial error in the admission of Forbes' testimony.

The above discussion covers all matters pertaining to Lampe's motion for a new trial. The trial court did not err in denying it.

The judgment of the trial court is affirmed.