Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
02/24/2017 09:08 AM CST

deNourie & Yost Homes, LLC, a Nebraska limited
liability company, appellant, v. Joe Frost and
Amy Frost, husband and wife, and Security
State Bank, doing business as Dundee Bank,
a Nebraska corporation, appellees.

___ N.W.2d ___

Filed February 24, 2017.    No. S-16-014.

1. **Judgments: Jurisdiction: Appeal and Error.** Determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its conclusions independent from a trial court.
2. **Appeal and Error.** The construction of a mandate issued by an appellate court presents a question of law.
3. **Election of Remedies.** Whether the election of remedies doctrine applies is a question of law.
4. **Judgments: Estoppel: Appeal and Error.** An appellate court reviews a court's application of judicial estoppel to the facts of a case for abuse of discretion and reviews its underlying factual findings for clear error.
5. **Actions: Appeal and Error.** The law-of-the-case doctrine reflects the principle that an issue litigated and decided in one stage of a case should not be relitigated at a later stage.
6. **Appeal and Error.** Under the law-of-the-case doctrine, an appellate court's holdings on issues presented to it conclusively settle all matters ruled upon, either expressly or by necessary implication.
7. ____. The law-of-the-case doctrine applies with greatest force when an appellate court remands a case to an inferior tribunal.
8. **Judgments: Appeal and Error.** Upon remand, a district court may not render a judgment or take action apart from that which the appellate court's mandate directs or permits.
9. ____: ____. The general rule is that a reversal of a judgment and the remand of a cause for further proceedings not inconsistent with the opinion, without specific direction to the trial court as to what it shall do, is

a general remand and the parties stand in the same position as if the case had never been tried.

10. ____: ____. Under the mandate branch of the law-of-the-case doctrine, a decision made at a previous stage of litigation, which could have been challenged in the ensuing appeal but was not, becomes the law of the case; the parties are deemed to have waived the right to challenge that decision.

11. **Waiver: Appeal and Error.** An issue is not considered waived if a party did not have both an opportunity and an incentive to raise it in a previous appeal.

12. **Election of Remedies.** The election of remedies doctrine is an affirmative defense.

13. **Pleadings.** A party must specifically plead an affirmative defense for the court to consider it.

14. **Contracts: Fraud.** A contract is voidable by a party if his or her manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which he or she is justified in relying.

15. **Contracts.** A voidable contract can be affirmed by the injured party.

16. **Election of Remedies.** The election of remedies doctrine generally applies in two instances: when a party seeks inconsistent remedies against another party or persons in privity with the other party or when a party asserts several claims against several parties for redress of the same injury.

17. **Damages.** A party may not have double recovery for a single injury, or be made more than whole by compensation which exceeds the actual damages sustained.

18. **Actions.** Where several claims are asserted against several parties for redress of the same injury, only one satisfaction can be had.

19. **Contracts: Fraud: Election of Remedies.** A party fraudulently induced to enter into a contract has an election of remedies: either to affirm the contract and sue for damages or to disaffirm the contract and be reinstated to the induced party's position which existed before entry into the contract.

20. **Election of Remedies.** The election of remedies doctrine does not preclude a plaintiff from pursuing two causes of action, such as breach of contract and fraud, where each action arose out of different obligations and different operative facts.

21. **Contracts: Fraud: Election of Remedies.** A party who fraudulently induces another to contract and then also refuses to perform the contract commits two separate wrongs, so that the same transaction gives rise to distinct claims that may be pursued to satisfaction consecutively.

22. **Equity: Estoppel.** Judicial estoppel is an equitable doctrine that a court invokes at its discretion to protect the integrity of the judicial process.
23. **Estoppel.** The doctrine of judicial estoppel protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.
24. **Estoppel: Intent.** Fundamentally, the intent behind the doctrine of judicial estoppel is to prevent parties from gaining an advantage by taking one position in a proceeding and then switching to a different position when convenient in a later proceeding.

Appeal from the District Court for Douglas County: Gary B. Randall, Judge. Reversed and remanded for further proceedings.

Jerrold L. Strasheim for appellant.

Christopher J. Tjaden, Michael J. Whaley, and Adam J. Wachal, of Gross & Welch, P.C., L.L.O., for appellee Security State Bank.

Kristopher J. Covi and Jay D. Koehn, of McGrath, North, Mullin & Kratz, P.C., L.L.O., for appellees Joe Frost and Amy Frost.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Cassel, J.

## INTRODUCTION

We address a second appeal from an action by a contractor seeking damages arising out of its construction of a house. Following our remand, the district court determined that the election of remedies doctrine and judicial estoppel required a dismissal of the contractor's claims. Because the claims were consistently premised on the existence of a contract, no election was required. And because the claims were based on different facts and obligations, both could be pursued. We therefore reverse, and remand for further proceedings.

## BACKGROUND

### NEW HOME CONSTRUCTION

In 2004, Joe Frost and Amy Frost obtained two loans for the construction of a new home. Security State Bank, doing business as Dundee Bank (the bank), was not the lender on either loan. In 2005, construction on the new home stopped. In 2007, the Frosts entered into a "Project Completion Agreement" with deNourie & Yost Homes, LLC (D&Y), under which they agreed to pay D&Y $325,630 in return for completion of the new home construction. At that time, Joe had a business relationship with the bank, in which the bank loaned Joe money. The Frosts defaulted on payments owed to D&Y and on both loans. Ultimately, the house was sold at foreclosure, and the Frosts filed for bankruptcy with no assets.

### PROCEEDINGS ON FOURTH
### AMENDED COMPLAINT

D&Y filed a fourth amended complaint against the Frosts and the bank. It alleged five causes of action: breach of contract against the Frosts; fraud, concealment, and nondisclosure against the Frosts; civil conspiracy against the Frosts and the bank; equitable estoppel against the bank; and promissory estoppel against the bank.

The bank moved for summary judgment, and the Frosts moved for partial summary judgment on the fraud and civil conspiracy causes of action. The district court sustained the motions as to D&Y's claims of fraudulent concealment and conspiracy. Because the court found that the fraudulent concealment claim against the Frosts failed as a matter of law, the court determined that there could be no conspiracy claim against the Frosts. With regard to the civil conspiracy claim against the bank, the court stated that "D&Y did not assert a cause of action for the underlying tort of fraudulent concealment against [the bank], and therefore, it cannot sustain a cause of action for conspiracy." This left remaining the claim against the Frosts for breach of contract and the

claims against the bank for equitable estoppel and promissory estoppel.

At the commencement of a bench trial on the remaining issues, the Frosts made an oral motion to confess judgment on D&Y's breach of contract claim in the amount of $245,000. The district court entered an order granting a judgment in favor of D&Y and against the Frosts in the amount of $245,000 and dismissing the Frosts as parties. Following the trial, the court found in favor of the bank and dismissed the fourth amended complaint with prejudice.

## FIRST APPEAL

D&Y appealed. In *deNourie & Yost Homes v. Frost* (*Frost I*),[1] we determined that the district court erred in granting summary judgment on D&Y's fraud and conspiracy claims. In the background section of the opinion, we stated that "[i]n April 2013, at the start of the bench trial, the Frosts confessed judgment for $245,000 on D&Y's breach of contract claim."[2] We held as follows:

- The court erred in granting summary judgment to the Frosts on D&Y's fraud claim because genuine issues of material fact existed whether the Frosts had intentionally made false or misleading representations that they could pay for D&Y's work.

- The court erred in granting summary judgment to the bank on D&Y's civil conspiracy claim because the complaint was sufficient to put the bank on notice that the claim rested on the bank's alleged conspiracy to commit fraud.

- The court erred in granting summary judgment to the Frosts on D&Y's civil conspiracy claim because its ruling rested on its incorrect judgment that D&Y's fraud claim failed as a matter of law and because it failed to

---

[1] *deNourie & Yost Homes v. Frost*, 289 Neb. 136, 854 N.W.2d 298 (2014).

[2] *Id.* at 146, 854 N.W.2d at 309.

consider that D&Y alleged two separate instances of fraudulent conduct.
• In the bench trial, the court did not err in finding that D&Y had failed to prove by clear and convincing evidence that the bank promised to finance D&Y's construction contract and to pay these funds directly to D&Y.[3]

With regard to the civil conspiracy claim against the bank, we "conclude[d] only that the court erred in granting summary judgment for its stated reason."[4] We reversed the summary judgment orders and "remand[ed] the cause to the court to conduct further proceedings on D&Y's claims of fraud and civil conspiracy."[5]

### Proceedings After Remand

After remand, D&Y filed a fifth amended complaint, which differed from the fourth amended complaint in several respects. The second cause of action, for "Fraud/Concealment/Nondisclosure," incorporated by reference all allegations of the third cause of action and contained numerous additional factual allegations. The new complaint set forth five representations that D&Y claimed were false and alleged that D&Y finished construction after it received assurance of payment from Joe and the president of the bank. The fifth amended complaint alleged that the failure of the Frosts to pay the $245,000 owed for completion of the construction "destroyed D&Y's business which is no longer functioning." It claimed that D&Y "suffered damages consisting of the unpaid $245,000 plus approximately $2,400,000 for the destruction of D&Y's business or the total of $2,645,000." In contrast, the fourth amended complaint sought damages of $242,500, "plus

---

[3] Id. at 139-40, 854 N.W.2d at 305.

[4] Id. at 157, 854 N.W.2d at 316.

[5] Id. at 163, 854 N.W.2d at 320.

damages in an undetermined amount for the destruction of D&Y's construction business."

D&Y also modified the third cause of action of the fifth amended complaint. D&Y alleged that there was a civil conspiracy between Joe and the bank to defraud D&Y, that the bank aided and abetted the Frosts' actions to defraud D&Y, and that Joe aided and abetted the acts of the bank to defraud D&Y. The third cause of action also included a number of new factual allegations, including specific acts and omissions demonstrating the alleged conspiracy.

The Frosts moved to dismiss the fifth amended complaint or, alternatively, moved for summary judgment. During a hearing on the motion, the bank stated that it would join in the Frosts' motion for summary judgment. The bank believed that if the Frosts were granted summary judgment, there would be no underlying action upon which the conspiracy action against the bank could be based. D&Y's counsel responded that the bank could support the Frosts' motion for summary judgment, but that it could not join it without filing and serving a motion. The district court agreed, stating, "I think he probably has to plead it, too, and have a separate hearing, if that's, in fact, what happens." No party adduced evidence during the hearing, but the Frosts requested that the court take judicial notice of the court's file. After the hearing, the bank filed an answer to the fifth amended complaint.

On November 25, 2015, the district court entered an order on the Frosts' alternative motions. First, the court denied the motion to dismiss, noting that the fifth amended complaint was filed before the deadline contained in the scheduling order. With regard to the motion for summary judgment, the court determined that the fraud claim was barred by the election of remedies. The court explained:

> In its Fifth Amended Complaint, D&Y claims that the Frosts breached the agreement or, in the alternative, they committed fraud in inducing [D&Y] to enter into and/or continue work under the contract. The Court finds that

either a contract exists and is enforceable, or there was fraud and the contract is void. Here, D&Y chose to take a judgment on the breach of contract claim. In doing so, D&Y elected breach of contract as a remedy which now forecloses D&Y from proceeding on any fraud claims.

The breach of contract claim is predicated on the existence of the contract. The fraud claim is based on allegations that D&Y would not have entered into the cont[r]act but for the alleged fraud and therefore the contract is void. Essentially, the damages D&Y sought (and obtained a judgment for) with respect to its breach of contract claim are to put [D&Y] in the position had the contract been fulfilled as agreed. Conversely, the damages D&Y seeks with respect to its fraud claim are to put D&Y in the position had the contract never occurred. It is clear that these remedies may not co-exist.

The district court also found that the doctrine of judicial estoppel "prevented" D&Y's fraud claim. The court stated that because D&Y had already reduced its breach of contract claim to judgment which was premised on the existence of a valid contract, judicial estoppel barred D&Y from now proceeding on a fraud claim based on a theory that the contract was not valid. The court therefore granted the Frosts' motion for summary judgment with respect to D&Y's fraud claim.

The district court also granted the Frosts' motion for summary judgment as to the civil conspiracy claim. The court stated:

[A]ny claims for fraudulent misrepresentations or concealment . . . would be premised on the lack of a contract. Once again, the damages D&Y sought (and obtained a judgment for) with respect to its breach of contract claim are to put D&Y in the position had the contract been fulfilled as agreed. Conversely, the damages D&Y seeks with respect to its conspiracy claim are to put D&Y in the position had the contract never occurred. It is clear that these remedies may not co-exist. Consequently, the Court finds that the doctrine of election of remedies and

doctrine of judicial estoppel bar[] D&Y's civil conspiracy claim for the same reasons that the doctrines bar D&Y's fraud claim.

On December 10, 2015, the district court entered an "order nunc pro tunc." The order stated that the November 25 order was intended to be a final order dismissing all claims against all defendants.

On December 23, 2015, D&Y filed a notice of appeal. The bank subsequently moved for summary dismissal of the civil conspiracy claim, asserting that we lacked jurisdiction over the claim. We overruled the motion, but reserved the issue until plenary submission of the appeal.

## ASSIGNMENTS OF ERROR

D&Y assigns that the district court erred in (1) failing to apply the law-of-the-case doctrine in accordance with our mandate, (2) failing to find that the Frosts and the bank waived the defense of election of remedies by not raising it in the earlier appeal, (3) granting summary judgment to the Frosts and the bank on the theory of election of remedies when that defense was never pled, (4) failing to hold that election of remedies "comes into play" after trial, (5) failing to hold that the purported confession of judgment was not an election of remedies, (6) failing to recognize that the purported confession of judgment was not entitled to be treated as a judgment with respect to merger and bar, (7) granting the Frosts and the bank summary judgment and dismissing D&Y's fraud and civil conspiracy claims without any evidence or any new evidence, (8) granting the bank summary judgment even though it had not filed a motion for summary judgment or followed the statutes providing for summary judgment, and (9) denying D&Y its right to trial and due process with respect to its fraud and civil conspiracy claims.

## STANDARD OF REVIEW

[1] Determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an

appellate court to reach its conclusions independent from a trial court.[6]

[2] The construction of a mandate issued by an appellate court presents a question of law.[7]

[3] Whether the election of remedies doctrine applies is a question of law.[8]

[4] An appellate court reviews a court's application of judicial estoppel to the facts of a case for abuse of discretion and reviews its underlying factual findings for clear error.[9]

## ANALYSIS

### JURISDICTION

The bank challenges our jurisdiction in this matter. It asserts that D&Y voluntarily dismissed its conspiracy claim against the bank in order to convert a nonfinal order of summary judgment in favor of the Frosts into a final, appealable order.

We have stated that a party may not dismiss without prejudice a cause of action in order to create finality and confer appellate jurisdiction where there would normally be none.[10] This is because one who has been granted that which he or she sought has not been aggrieved, and only a party aggrieved by an order or judgment can appeal.[11]

Lack of clarity in the record complicates resolution of what should be a simple question. The bank asserts that D&Y orally

---

[6] *City of Springfield v. City of Papillion*, 294 Neb. 604, 883 N.W.2d 647 (2016).

[7] *Liljestrand v. Dell Enters.*, 287 Neb. 242, 842 N.W.2d 575 (2014).

[8] See, *American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321 (5th Cir. 2008); *In re Estate of Koellen*, 167 Kan. 676, 208 P.2d 595 (1949); *Wickenhauser v. Lehtinen*, 302 Wis. 2d 41, 734 N.W.2d 855 (2007).

[9] *Cleaver-Brooks, Inc. v. Twin City Fire Ins. Co.*, 291 Neb. 278, 865 N.W.2d 105 (2015).

[10] See *Smith v. Lincoln Meadows Homeowners Assn.*, 267 Neb. 849, 678 N.W.2d 726 (2004).

[11] See *id.*

moved to voluntarily dismiss its conspiracy claim against the bank. D&Y, on the other hand, contends that the district court granted the bank summary judgment on that claim. The bill of exceptions does not contain any proceedings on the oral motion. Both parties rely on the court's purported order nunc pro tunc, which, as it appears in our transcript, stated:

> On the oral motion of [D&Y] through its counsel to clarify the finality of this court's November 25, 2015 Order on Defendants' Motion to Dismiss Fifth Amended Complaint or in the alternative Motion For Summary Judgment ("November 25 Order"), it is hereby ordered nunc pro tunc that the November 25 Order is intended to be and is a final order dismissing all claims of [D&Y] against all Defendants, and to the extent necessary, if any, decides against [D&Y] on all of [D&Y's] claims for relief against all Defendants, and dismisses this action in its entirety.

The bank claims that the order nunc pro tunc documents D&Y's oral motion to dismiss. But D&Y denies voluntarily dismissing the claim, and such dismissal is not plainly contained in the record. The order's reference to D&Y's "oral motion" does not compel an inference that D&Y orally moved to dismiss its claim against the bank.

Even if the district court intended the order as something else, it appears on its face to have been an order modifying a previous order made within the same term.[12] The order clearly dismissed all claims against both the Frosts and the bank. Thus, there is a final, appealable order. We conclude that we have jurisdiction over all of the parties.

## Law-of-the-Case Doctrine

[5-8] The law-of-the-case doctrine is occasionally invoked in cases following a remand by an appellate court. The law-of-the-case doctrine reflects the principle that an issue

---

[12] See Neb. Rev. Stat. § 25-2001(1) (Reissue 2016).

litigated and decided in one stage of a case should not be relitigated at a later stage.[13] Under this doctrine, an appellate court's holdings on issues presented to it conclusively settle all matters ruled upon, either expressly or by necessary implication.[14] The doctrine applies with greatest force when an appellate court remands a case to an inferior tribunal.[15] Upon remand, a district court may not render a judgment or take action apart from that which the appellate court's mandate directs or permits.[16]

D&Y advances three reasons why it believes the law-of-the-case doctrine precluded the district court from entering summary judgment. We find no merit to any of them.

First, D&Y asserts that "[s]ummary [j]udgment is barred under the law-of-the-case doctrine."[17] D&Y's argument is based upon our reversal of summary judgment on the fraud and civil conspiracy claims in *Frost I*. According to D&Y, we "implicitly" held that D&Y was entitled to a trial on those claims.[18] It draws this conclusion from our statements that preponderance of evidence standards would apply, that a fact finder could determine Joe colluded with a banker in December 2007 to make fraudulent misrepresentations about the availability of funding, and that a fact finder could reasonably believe D&Y's evidence. D&Y reads too much into our mandate.

[9] Our opinion and mandate did not specify any particular action to be taken by the district court. The general rule is that a reversal of a judgment and the remand of a cause for further proceedings not inconsistent with the opinion, without specific direction to the trial court as to what it shall do, is a

---

[13] *Bauermeister Deaver Ecol. v. Waste Mgmt. Co.*, 290 Neb. 899, 863 N.W.2d 131 (2015).

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] Brief for appellant at 13.

[18] *Id.* at 14.

general remand and the parties stand in the same position as if
the case had never been tried.[19] But there is an exception—if
the undisputed facts are such that but one judgment could be
rendered, the trial court should enter such judgment, notwith-
standing the mandate did not so direct.[20] The exception does
not apply here. Our opinion in *Frost I* left open a number of
possible actions upon remand. A trial on the claims for fraud
and civil conspiracy was one possibility. But other possible
actions include opening the case for the reception of additional
evidence or deciding the case without receiving additional
evidence.[21] We conclude that the law-of-the-case doctrine did
not require a trial on D&Y's fraud and civil conspiracy claims.
Instead, our general remand returned the parties to the same
position as though summary judgment had not been entered
against D&Y on those claims. Proceedings on whether the
doctrines of election of remedies or judicial estoppel apply
were within the scope of our broad mandate.

[10,11] Second, D&Y contends that the Frosts waived the
right to raise election of remedies or judicial estoppel by not
raising them in the first appeal. We disagree. Under the man-
date branch of the law-of-the-case doctrine, a decision made
at a previous stage of litigation, which could have been chal-
lenged in the ensuing appeal but was not, becomes the law
of the case; the parties are deemed to have waived the right
to challenge that decision.[22] But an issue is not considered
waived if a party did not have both an opportunity and an
incentive to raise it in a previous appeal.[23] The Frosts had no
incentive to raise those potential defenses in *Frost I*, because
the trial court had entered summary judgment in their favor

---

[19] *Master Laboratories, Inc. v. Chesnut*, 157 Neb. 317, 59 N.W.2d 571
(1953).

[20] See *Bohmont v. Moore*, 141 Neb. 91, 2 N.W.2d 599 (1942).

[21] See 5 C.J.S. *Appeal and Error* § 1139 (2007).

[22] *Bauermeister Deaver Ecol. v. Waste Mgmt. Co., supra* note 13.

[23] *Id.*

and the Frosts did not challenge any action taken by the court. Further, it would not have been proper to raise election of remedies in *Frost I* when it had not been raised at the trial court level. This follows from the rule that an appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court.[24]

Third, D&Y claims that an exception to application of the law-of-the-case doctrine does not apply. The doctrine does not apply in subsequent proceedings when the petitioner presents materially and substantially different facts.[25] D&Y points out that the Frosts offered no new evidence at the summary judgment hearing following remand. Thus, it argues, the exception does not apply. This argument compares apples and oranges. The Frosts asserted the new defenses of election of remedies and judicial estoppel. And, if applicable, those defenses would have the effect of barring further proceedings on the fraud and conspiracy claims.

### Election of Remedies

The heart of D&Y's appeal is that the district court erred in granting summary judgment to the Frosts on the basis that D&Y's claims were barred by the election of remedies doctrine. We agree that the court erred in granting summary judgment on this basis. Before reaching the merits of this matter, we address two preliminary matters.

[12,13] We first address D&Y's assignment that the district court erred in granting summary judgment on the election of remedies defense where it was never pled. The election of remedies doctrine is an affirmative defense.[26] A party must specifically plead an affirmative defense for the court to consider it.[27]

---

[24] See *Hargesheimer v. Gale*, 294 Neb. 123, 881 N.W.2d 589 (2016).

[25] *Money v. Tyrrell Flowers*, 275 Neb. 602, 748 N.W.2d 49 (2008).

[26] *Weitz Co. v. Hands, Inc.*, 294 Neb. 215, 882 N.W.2d 659 (2016).

[27] *Id.*

The Frosts asserted the defense in a motion directed to a pleading that ceased to serve as the operative pleading. In a motion for summary judgment responsive to the fourth amended complaint, the Frosts asserted they were entitled to judgment on the basis of election of remedies. But nearly 1 month later, D&Y filed its fifth amended complaint. At that point, the fourth amended complaint no longer operated as a pleading. An amended pleading supersedes the original pleading, whereupon the original pleading ceases to perform any office as a pleading.[28]

The Frosts did not reassert the defense of election of remedies in their motions responsive to the fifth amended complaint. The Frosts filed a motion to dismiss the fifth amended complaint under Neb. Ct. R. Pldg. § 6-1112(b)(6) for failure to state a claim upon which relief can be granted. An affirmative defense may be asserted in a motion filed pursuant to § 6-1112(b)(6) when the defense appears on the face of the complaint.[29] But the operative complaint made no mention of the confession of judgment or otherwise showed that an election of remedies had allegedly been made. The Frosts alternatively moved for summary judgment, but they did not refer to the election of remedies doctrine.

However, in an objection to the Frosts' motions, D&Y responded to the Frosts' "defense that the . . . [c]onfession of [j]udgment [f]or [b]reach of [c]ontract is a bar to [D&Y's] causes of action." Based upon D&Y's response, we assume, without deciding, that the defense was properly before the district court.

[14,15] We next address an erroneous statement by the district court. The court stated that "either a contract exists and is enforceable, or there was fraud and the contract is void." A contract is voidable by a party if his or her manifestation of

---

[28] *State v. Armendariz*, 289 Neb. 896, 857 N.W.2d 775 (2015).

[29] *Weeder v. Central Comm. College*, 269 Neb. 114, 691 N.W.2d 508 (2005).

assent is induced by either a fraudulent or a material misrepresentation by the other party upon which he or she is justified in relying.[30] And a voidable contract can be affirmed by the injured party.[31] Thus, when a party has been fraudulently induced to enter a contract, the contract is not void but voidable. Having disposed of the preliminary matters, we turn our focus to the election of remedies doctrine.

[16-18] We first recall general principles concerning the doctrine. The election of remedies doctrine generally applies in two instances: when a party seeks inconsistent remedies against another party or persons in privity with the other party or when a party asserts several claims against several parties for redress of the same injury.[32] A party may not have double recovery for a single injury, or be made more than whole by compensation which exceeds the actual damages sustained.[33] Where several claims are asserted against several parties for redress of the same injury, only one satisfaction can be had.[34]

[19] D&Y did not assert inconsistent theories of recovery or seek inconsistent remedies. Certainly, a party cannot proceed on a theory of recovery which is premised upon the existence of a contract and at the same time proceed alternatively on a theory which is premised on the lack of a contract.[35] But contrary to the district court's determination, D&Y did not do so. A party fraudulently induced to enter into a contract has an election of remedies: either to affirm the contract and sue for damages or to disaffirm the contract and be reinstated

---

[30] *InterCall, Inc. v. Egenera, Inc.*, 284 Neb. 801, 824 N.W.2d 12 (2012).

[31] See *First Nat. Bank v. Guenther*, 125 Neb. 807, 252 N.W. 395 (1934).

[32] *In re 2007 Appropriations of Niobrara River Waters*, 278 Neb. 137, 768 N.W.2d 420 (2009).

[33] *Genetti v. Caterpillar, Inc.*, 261 Neb. 98, 621 N.W.2d 529 (2001).

[34] *Id.*

[35] *Tobin v. Flynn & Larsen Implement Co.*, 220 Neb. 259, 369 N.W.2d 96 (1985).

to the induced party's position which existed before entry into the contract.[36] Thus, rescission is not the only remedy available. A defrauded party may affirm the contract and seek damages. And doing so is entirely consistent with a breach of contract action, which necessarily affirms the existence of the contract.

D&Y did not seek to rescind the contract. Indeed, rescission would not have been proper. The purpose of rescission is to place the parties in a status quo, that is, return the parties to their position which existed before the rescinded contract.[37] But here, the parties could not be placed in a status quo. D&Y completed construction on the Frosts' home, and in doing so without payment from the Frosts, it allegedly suffered a destruction of its business. Since that time, the Frosts' home was sold at foreclosure and the Frosts filed for bankruptcy without assets.

Instead, D&Y sought damages for both its breach of contract claim and its fraud claims. The proper measure of damages in a contract action is the losses sustained by reason of a breach.[38] In an action for fraud, a party may recover such damages as will compensate him or her for the loss or injury actually caused by the fraud and place the defrauded party in the same position as he or she would have been in had the fraud not occurred.[39] We invoked this precise rule in a case where the plaintiff chose to affirm the contract and sue for damages.[40] We have stated that "there is nothing inconsistent

---

[36] See *InterCall, Inc. v. Egenera, Inc., supra* note 30.

[37] *Bauermeister v. McReynolds*, 253 Neb. 554, 571 N.W.2d 79 (1997).

[38] *Bachman v. Easy Parking of America*, 252 Neb. 325, 562 N.W.2d 369 (1997).

[39] *Streeks v. Diamond Hill Farms*, 258 Neb. 581, 605 N.W.2d 110 (2000), *overruled in part on other grounds, Knights of Columbus Council 3152 v. KFS BD, Inc.*, 280 Neb. 904, 791 N.W.2d 317 (2010).

[40] See *Forker Solar, Inc. v. Knoblauch*, 224 Neb. 143, 396 N.W.2d 273 (1986).

in seeking to recover damages arising by virtue of having been induced to enter into a contract by fraud and seeking to recover damages because express and implied warranties were allegedly breached," because "[a]ll three theories rest upon the premise that a contract came into being which resulted in damages."[41] Similarly, where a plaintiff affirmed the contract on his fraud-based theories rather than requesting rescission, we stated that "it is entirely consistent for him to also assert a claim based on breach of its terms."[42] Because D&Y affirmed the contract and sought damages for both the breach of contract and fraud claims, the election of remedies doctrine is not applicable.

[20,21] Nor does the election of remedies doctrine preclude a plaintiff from pursuing two causes of action, such as breach of contract and fraud, where each action arose out of different obligations and different operative facts.[43] "'A party who fraudulently induces another to contract and then also refuses to perform the contract commits two separate wrongs, so that the same transaction gives rise to distinct claims that may be pursued to satisfaction consecutively.'"[44]

D&Y's causes of action were based on different facts and obligations. D&Y based its breach of contract action on the Frosts' failure to pay amounts due under the contract. It alleged that "[a]s a proximate result of the Frosts' failures to perform their payment obligations, D&Y and its principals were denied $250,000 necessary for business operating capital

---

[41] *Tobin v. Flynn & Larsen Implement Co., supra* note 35, 220 Neb. at 261, 369 N.W.2d at 98-99.

[42] *Gibb v. Citicorp Mortgage, Inc.*, 246 Neb. 355, 374, 518 N.W.2d 910, 923 (1994).

[43] See *General Ins. v. Mammoth Vista Owners Ass'n*, 174 Cal. App. 3d 810, 220 Cal. Rptr. 291 (1985).

[44] *Davis v. Cleary Building Corp.*, 143 S.W.3d 659, 669 (Mo. App. 2004). See, also, *Acadia Partners, L.P. v. Tompkins*, 673 So. 2d 487 (Fla. App. 1996).

essential for D&Y to perform its business function and to pursue any future business opportunity." On the other hand, D&Y premised its fraudulent concealment cause of action on the Frosts' false representations upon which D&Y relied in entering into the contract and in subsequently completing the construction of the home. Its fraud action alleged that "[t]he Frosts induced D&Y to enter into the [contract] by concealing from D&Y and not disclosing that the Frosts were insolvent and that more likely than not the Frosts could not pay and would not be able to pay . . . ." The causes of action arose at different points of time from the violation of separate obligations. Because the causes of action were based on different obligations and were not repugnant to one another, D&Y could pursue both. Thus, the purported confession of judgment on the breach of contract claim did not bar D&Y from pursuing its fraud claims.

In summary, the district court erred in granting summary judgment to the Frosts on the basis of election of remedies. D&Y did not assert inconsistent claims or inconsistent remedies. Both its breach of contract and its fraud claims were based on the existence of a contract, and both sought damages. Further, the claims were based on different facts and different obligations, such that recovery could potentially be had on both. And because the court's entry of summary judgment on the civil conspiracy claim was premised on the same erroneous belief that the remedies sought may not coexist, it, too, must be reversed.

### Judicial Estoppel

The district court also found that "D&Y's fraud claim is prevented by the doctrine of judicial estoppel." We disagree, for reasons similar to those discussed with respect to election of remedies.

[22-24] Judicial estoppel is an equitable doctrine that a court invokes at its discretion to protect the integrity of the judicial

process.[45] The doctrine of judicial estoppel protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding.[46] Fundamentally, the intent behind the doctrine of judicial estoppel is to prevent parties from gaining an advantage by taking one position in a proceeding and then switching to a different position when convenient in a later proceeding.[47]

Judicial estoppel does not apply, because D&Y has not asserted an inconsistent position. The district court found that judicial estoppel barred D&Y from proceeding on a fraud claim based on a theory that the contract was not valid. But as discussed above, D&Y's fraud claim was premised on the existence of a contract, which is not inconsistent with a claim for breach of contract. Accordingly, the court abused its discretion in finding that the doctrine of judicial estoppel applied.

## JUDGMENT IN FAVOR
### OF THE BANK

D&Y assigns that the district court erred in granting the bank summary judgment. It points out that the bank did not file a motion for summary judgment or follow the statutes providing for summary judgment. However, the record does not demonstrate that the court granted summary judgment to the bank. The November 2015 order clearly granted summary judgment to the Frosts only. And the purported order nunc pro tunc merely stated that the court "to the extent necessary, if any, decides against [D&Y] on all of [D&Y's] claims for relief against" the Frosts and the bank. But because judgment may have been entered in the bank's favor based on the erroneous entry of summary judgment in the Frosts' favor on the

---

[45] *Cleaver-Brooks, Inc. v. Twin City Fire Ins. Co., supra* note 9.

[46] *Id.*

[47] *Id.*

civil conspiracy claim, we must reverse, and remand for further proceedings.

## CONCLUSION

We conclude that under the law-of-the-case doctrine, our general remand for further proceedings in *Frost I* did not preclude the district court from entering summary judgment. However, because an election of remedies was not required, the court erred in granting summary judgment to the Frosts on that basis. And because D&Y did not assert inconsistent positions, the court abused its discretion in finding that the doctrine of judicial estoppel barred D&Y's fraud and conspiracy claims. The court further erred in entering judgment in favor of the bank. We reverse the order granting summary judgment to the Frosts and the purported "order tunc pro tunc," and remand the cause for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.