Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/26/2016 02:10 PM CDT

- 604 -

Nebraska Supreme Court Advance Sheets
294 Nebraska Reports
CITY OF SPRINGFIELD v. CITY OF PAPILLION
Cite as 294 Neb. 604

City of Springfield, Nebraska, a Nebraska municipal corporation, appellant, v. City of Papillion, Nebraska, a Nebraska municipal corporation, and County of Sarpy, Nebraska, a body corporate and politic, appellees.

___ N.W.2d ___

Filed August 26, 2016.    No. S-15-882.

1. **Judgments: Jurisdiction: Appeal and Error.** Determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its conclusions independent from a trial court.
2. **Standing: Words and Phrases.** Standing involves a real interest in the cause of action, meaning some legal or equitable right, title, or interest in the subject matter of the controversy.
3. **Standing: Claims: Parties: Proof.** To have standing, a litigant must assert its own rights and interests and demonstrate an injury in fact, which is concrete in both a qualitative and temporal sense. The alleged injury in fact must be distinct and palpable, as opposed to merely abstract, and the alleged harm must be actual or imminent, not conjectural or hypothetical.
4. **Annexation: Proof.** To challenge an annexation, the plaintiff must show (1) a personal, pecuniary, and legal interest that has been affected by the annexation and (2) the existence of an injury to that interest that is personal in nature.

Appeal from the District Court for Sarpy County: William B. Zastera, Judge. Reversed and remanded for further proceedings.

William E. Seidler, Jr., of Seidler & Seidler, P.C., for appellant.

Karla R. Rupiper, Papillion City Attorney, and Jessica E. Thomas for appellee City of Papillion.

Heavican, C.J., Wright, Miller-Lerman, Cassel, and Stacy, JJ.

Heavican, C.J.

## NATURE OF CASE

The City of Springfield, Nebraska, filed this action against the City of Papillion, Nebraska, and the County of Sarpy, Nebraska (County), seeking to enjoin Papillion from annexing land which had been indicated as Springfield's area of future growth in a map adopted by the County in 1995. The district court for Sarpy County found that Springfield lacked standing and Springfield appeals.

## BACKGROUND

In 1994, the Nebraska Legislature passed the County Industrial Sewer Construction Act (Act).[1] The Act's legislative findings indicate that the Legislature intended to attract commercial and industrial development by sharing costs of sewer development across counties and by giving counties the authority to manage construction of these sewers.[2] As part of this program, certain municipalities were granted new authority to prevent counties from expanding the use of sewers for residential development in areas of the municipality's predicted future growth and development.[3] These municipalities were also given authority to appoint members of urbanizing area planning commissions.[4]

Under procedures outlined in the Act, a 1995 resolution passed by the County identified a parcel of land south of Highway 370 as part of Springfield's area of future growth and

---

[1] See Neb. Rev. Stat. §§ 23-3601 to 23-3637 (Reissue 2012).

[2] § 23-3602.

[3] § 23-3614.

[4] § 23-3632.

development. However, in July 2015, Papillion enacted ordinances Nos. 1715 and 1716, annexing some of this area.

Springfield filed suit, claiming the annexation was invalid under Neb. Rev. Stat. §§ 16-117 to 16-130 (Reissue 2012). It sought temporary and permanent injunctive relief against Papillion and the County. The district court initially granted a temporary restraining order, but after a hearing, the district court dismissed the case for lack of standing. The district court agreed with the defendants' contention that the "Act is in place primarily for [the] County's planning and construction of sewer systems, and [the] County's associate Future Growth Map is an ever evolving tool." Therefore, the district court found the Act did not grant Springfield standing.

## ASSIGNMENT OF ERROR

Springfield assigns, consolidated into one assignment of error, that the district court erred by dismissing the suit for lack of standing.

## STANDARD OF REVIEW

[1] Determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its conclusions independent from a trial court.[5]

## ANALYSIS

The sole issue on appeal is whether the Act grants Springfield an interest sufficient to give Springfield standing to challenge Papillion's allegedly illegal annexation of that land, even though that land is outside of Springfield's boundaries and its extraterritorial jurisdiction for purposes of zoning and platting. The validity of Papillion's annexation is not at issue on appeal. On appeal, Springfield asserts that it has standing because the annexation would interfere with Springfield's governmental functions under §§ 23-3614, 23-3633, and 23-3635, discussed further below. We agree.

---

[5] See *State ex rel. Reed v. State*, 278 Neb. 564, 773 N.W.2d 349 (2009).

- 607 -

Nebraska Supreme Court Advance Sheets
294 Nebraska Reports
CITY OF SPRINGFIELD v. CITY OF PAPILLION
Cite as 294 Neb. 604

*Standing to Challenge Annexation Generally.*

[2,3] As a general rule, standing involves a real interest in the cause of action, meaning some legal or equitable right, title, or interest in the subject matter of the controversy.[6] To have standing, a litigant must assert its own rights and interests and demonstrate an injury in fact, which is concrete in both a qualitative and temporal sense. The alleged injury in fact must be distinct and palpable, as opposed to merely abstract, and the alleged harm must be actual or imminent, not conjectural or hypothetical.[7]

[4] To challenge an annexation, the plaintiff "must show (1) a personal, pecuniary, and legal interest that has been affected by the annexation and (2) the existence of an injury to that interest that is personal in nature."[8] We have held that residents, property owners, taxpayers, and voters of an area sought to be annexed—as well as municipalities sought to be annexed—have standing to challenge annexation.[9] In *Sullivan v. City of Omaha*,[10] we extended this rule to residents, property owners, and taxpayers outside of the area sought to be annexed, but within the annexing power's new extraterritorial jurisdiction. Generally, landowners outside of the annexing municipality's new territory and extraterritorial jurisdiction do not have standing.[11]

In *County of Sarpy v. City of Gretna*,[12] this court stated that the enumerated list of persons with standing from *Sullivan v. City of Omaha* was not exclusive. In *County of Sarpy v. City*

[6] *In re Interest of Enyce J. & Eternity M.*, 291 Neb. 965, 870 N.W.2d 413 (2015).

[7] *Butler Cty. Sch. Dist. v. Freeholder Petitioners*, 283 Neb. 903, 814 N.W.2d 724 (2012).

[8] *County of Sarpy v. City of Gretna*, 267 Neb. 943, 948, 678 N.W.2d 740, 744 (2004).

[9] *Wagner v. City of Omaha*, 156 Neb. 163, 55 N.W.2d 490 (1952).

[10] *Sullivan v. City of Omaha*, 183 Neb. 511, 162 N.W.2d 227 (1968).

[11] *Adam v. City of Hastings*, 267 Neb. 641, 676 N.W.2d 710 (2004).

[12] *County of Sarpy v. City of Gretna, supra* note 8.

- 608 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
294 NEBRASKA REPORTS
CITY OF SPRINGFIELD v. CITY OF PAPILLION
Cite as 294 Neb. 604

*of Gretna*, we held that a county has standing to challenge a city's allegedly unlawful annexation of property within the county's boundaries. We cited numerous cases from other jurisdictions that have held that a county does have standing to challenge annexation. We found these authorities persuasive and reasoned that

> an annexation alters the normal relationship, i.e., power structure, between the two governmental entities. Stated otherwise, these courts have recognized that when a city annexes land within a county's borders, the city infringes upon, in a variety of ways, a county's governmental function. Obviously, this is an intended consequence of annexation. . . . However, this does not mean a county is without a legally protectable interest.[13]

The case now before this court presents an issue of first impression. Though we have held that a county may challenge an allegedly illegal annexation that infringes upon the county's governmental function and that parties within the newly annexed territory or extraterritorial jurisdiction may do so, we have not considered whether a city may challenge an annexation that infringes on the city's powers over areas of future growth and development.

*The Act Grants Standing.*

To determine whether the Act grants an interest to municipalities sufficient to give Springfield standing in this case, we must identify the rights or powers bestowed by the Act. The Act requires counties to send formal notice to certain municipalities within a county whenever the county board adopts a resolution to develop, improve, or extend a sewerage system.[14] Section 23-3607, then, gives each municipality 45 days to file "a map clearly delineating the proposed boundaries of the area of future growth and development of the city or village." The municipalities may include areas outside

---

[13] *Id.* at 949-50, 678 N.W.2d at 745-46.

[14] § 23-3606.

- 609 -

Nebraska Supreme Court Advance Sheets
294 Nebraska Reports
CITY OF SPRINGFIELD v. CITY OF PAPILLION
Cite as 294 Neb. 604

their current extraterritorial jurisdiction if they reasonably anticipate that based upon population and growth trends, those areas will come under their jurisdiction in the future.[15] The county board then reviews the proposed maps and after public hearing, resolves any conflicts based upon predicted growth patterns.[16]

We find that three rights associated with a municipality's area of future growth and development give rise to standing in this case. First, a map delineating areas of future growth and development may only be amended by procedures listed in § 23-3611, which states:

(2) When the county board is notified that the area over which a city or village formally exercises jurisdiction for purposes of zoning or platting has been extended so as to include a portion of the area of future growth and development of another city or village, the board shall promptly amend the map so as to place the territory that is in the jurisdiction of the city or village for zoning or platting purposes within the area of future growth and development of the same city or village.

(3) Upon the request of a city or village . . . the county board shall review the territories specified in the request as requiring reallocation and make such changes as it deems warranted. The review shall be carried out in the same manner as prescribed in sections 23-3609 and 23-3610 for dealing with disputed territory [requiring notice be given and a public hearing be held].

In this case, the method in subsection (2) applied, because Papillion extended its jurisdiction into Springfield's area of future growth and development. However, if Papillion had requested a revision to the map rather than proceeding with annexation, Springfield would have been entitled to notice and a public hearing under subsection (3). Papillion's allegedly invalid annexation deprived Springfield of this process.

---

[15] § 23-3608.

[16] § 23-3610.

Second, once the property at issue in this case was identified as Springfield's area of future growth and development, the county was required to give Springfield notice of any plans for sewerage system development in that property—even though the property was outside of Springfield's extraterritorial jurisdiction.[17] If the County had proposed any development, it would not have been permitted to proceed without an authorizing vote by Springfield's governing body.[18]

Third, under § 23-3632, Springfield was able to appoint three of the six members on the urbanizing area planning commission with jurisdiction over the municipalities' areas of future growth and development. The planning commission has veto power over applications for residential connections to sewerage systems in those areas, including issues of zoning, adjustment appeals, replatting, building codes, and permitting as may arise out of an application for connection.[19]

The fact that Springfield was not actively exercising each of these rights under the Act does not deprive Springfield of standing. The right to exercise these powers was a personal, legal interest of Springfield's, regardless of whether it was actively exercising these rights at the time Papillion annexed the disputed territory.

Furthermore, though the Act contemplates that territory in one municipality's area of future growth and development may be subsumed by another municipality's jurisdiction, Springfield may nevertheless bring suit. The fleeting nature of a right should not render that right indefensible. In *County of Sarpy v. City of Gretna*, this court noted that the expectation that annexations will occur does not preclude injured parties from bringing suit. Following this logic, it is irrelevant that Springfield's governmental functions could have been legally infringed upon by a proper annexation. Our only inquiry is

---

[17] See § 23-3612.

[18] See § 23-3614.

[19] § 23-3633.

whether Springfield suffered an injury to a personal, pecuniary, and legal interest. The standing inquiry does not proceed to question whether the interest injured was absolute.

We hold that the Act grants Springfield standing to challenge Papillion's annexation. The reasoning of *County of Sarpy v. City of Gretna* applies here. In that case, we considered whether a county may challenge an annexation of territory under its authority and held that because the annexation limited that authority, the county's interest was sufficient to give it standing. Here, although we consider the interest of a city over property only partially under the city's authority, the annexation of that property still limits the city's authority. Springfield has statutory power to approve or reject development plans in its area of future growth and development, and three of the six seats on a planning commission with veto power over residential connections in that area. Papillion's annexation of that area infringes upon Springfield's power to do so. Further, the annexation deprived Papillion of the notice and hearing that would have been required in the alternative method for amending maps under § 23-3611(3).

Springfield has asserted an infringement of its statutory governmental functions and rights under the Act. As in *County of Sarpy v. City of Gretna*, that infringement is sufficient to grant standing.

For these reasons, we find merit to Springfield's assignment of error.

## CONCLUSION

The decision of the district court is reversed, and the cause is remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

CONNOLLY and KELCH, JJ., not participating.