IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

PARKING MGMT. & CONSULTANTS V. CITY OF OMAHA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

PARKING MANAGEMENT & CONSULTANTS, INC., APPELLANT,

V.

CITY OF OMAHA ET AL., APPELLEES.

Filed March 7, 2017.    No. A-15-1112.

Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Affirmed in part, and in part reversed and vacated.

James H. Monahan and Maureen K. Monahan, of Monahan & Monahan, for appellant.

Alan M. Thelen, Deputy Omaha City Attorney, and Jennifer J. Taylor for appellees City of Omaha, Bob Stubbe, and Todd Pfitzer.

Douglas J. Peterson, Attorney General, and Barry K. Waid for appellee State of Nebraska.

RIEDMANN, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

### INTRODUCTION

Parking Management & Consultants, Inc. (PMC), sued the City of Omaha, Bob Stubbe (Public Works Director for the City of Omaha), and Todd Pfizer (City Engineer) (these defendants/appellees will be collectively referred to as "the City"), and the State of Nebraska. PMC sought injunctive relief and damages due to the City's barricading of a driveway approach PMC had installed to access an area of a vacated street, which PMC believed was part of its leased property. The district court for Douglas County concluded PMC did not have any interest in the disputed property and lacked standing to bring the action, and alternatively concluded that summary judgment was nevertheless appropriate in favor of the City and the State. Although for

- 1 -

different reasons, we affirm the order granting summary judgment to the City and the State (and denying PMC's motion for summary judgment). However, the part of the court's order concluding PMC lacked standing is reversed and vacated.

BACKGROUND

This is the second time this case has been before us. The dispute involves Blocks 41 and 40 and the vacated old 14th Street in Omaha, Nebraska, located below the I-480 bridge where 15th, 14th, and 13th Streets run north/south. Blocks 41 and 40 are bordered to the north by Cass Street and to the south by Chicago Street. From what we can tell from our record, Block 41 is bordered to the west by 15th Street and to the east by the new 14th Street; and Block 40 is bordered to the west by the vacated 14th Street and to the east by 13th Street. Between the current 14th Street and Block 40 is an area of vacated street where the former 14th Street had been located. Accordingly, going west to east, the order is as follows: 15th Street, Block 41, new 14th Street, vacated 14th Street, Block 40, and then 13th Street. (See Appendix A for simplified maps of the locations at issue.)

Before 14th Street was physically moved in 2001 (it was not legally finalized until 2007), Blocks 41 and 40 each had 8 Lots, and 14th Street ran between the two blocks of land. However, when 14th Street was moved one-half block west of its former location, Lots 1 and 8 of Block 41 were consumed by the newly located 14th Street, as were one-half of Lots 2 and 7. There is no dispute that PMC leased that portion of Block 41 bordered by 15th Street to the west and new 14th Street to the east. And PMC does not allege any leasehold interest in the original Block 40. Rather, the dispute lies in PMC's claimed leasehold interest in what remains of the vacated former 14th Street which is bordered to the west by the new 14th Street and to the east by the original Block 40. PMC claimed a leasehold interest in the area comprised of the vacated former 14th Street in lieu of the lost lots on Block 41. In other words, since the new location of 14th Street displaced leased space in the original Block 41, PMC believed it was entitled to use the vacated former 14th Street property in its place.

*Initial Proceeding.*

When this matter came before us the first time, our unpublished memorandum opinion filed on January 27, 2015, concluded the following. Pursuant to an "Airspace Lease Agreement," PMC leased and operated a parking lot in Omaha from the State of Nebraska. The operating lease was dated September 14, 2009, and allowed PMC to change the layout and entrances to the parking lot. The City physically moved 14th Street one-half block west in 2001; however, it was not legally finalized until 2007. In May 2007, an ordinance was passed by the City vacating the old 14th Street and granting title to the vacated right-of-way to the abutting owners on either side of the centerline; the owner being the State. PMC claimed that after 14th Street moved one-half block west, the City did not repave the property to the east of the new 14th Street, thereby making it unusable.

Our opinion pointed out that the September 14, 2009, lease between PMC and the State was entered into by PMC after 14th Street had been physically moved in 2001 and legally finalized in 2007. The lease covered only the property in Block 41 between 14th Street and 15th Street. The lease did not give PMC any interest in the property to the east of 14th Street, which consisted of

- 2 -

the old vacated 14th Street and Block 40. Nevertheless, on or about May 7, 2013, PMC removed the curb along the east side of the new 14th Street, between Cass and Chicago Streets, and installed a concrete ramp as a driveway approach. PMC did not request or receive any permits from the City before removing the curb or installing the driveway approach. The driveway approach was intended to connect the new 14th Street with the property to its immediate east (vacated 14th Street) to which PMC claimed some interest. We could not tell from the record, however, what interest, if any, PMC may have had in the property to the east of the new 14th Street.

We noted that on or about May 14, 2013, the City placed barricades across the driveway approach created by PMC. This was done on an emergency basis as the City claimed it needed to protect the public from a dangerous traffic condition (the City claimed the driveway approach was too close to the intersection of 14th Street and the I-480 ramp and was therefore improper and dangerous). The City sent PMC a notice on June 19 giving it 30 days to remove the driveway approach and replace the curb; and if the owner failed to do so within 30 days, the City would remove the driveway approach itself and assess the property for the cost of such work. PMC did not remove the driveway approach and did not replace the curb. Instead, on July 8, PMC filed a "Petition for Injunction" seeking an order requiring the City to remove the barricades. The petition also sought to enjoin the City and its agents from reconstructing any portion of the drive or otherwise preventing PMC from using the parking lot. PMC also sought money damages.

The City filed an amended motion for summary judgment, and on November 1, 2013, the court held a hearing on PMC's motion for temporary injunction and the City's motion for summary judgment. Numerous exhibits were offered and received into evidence. In its order filed on November 13, the court did not address the issues of standing or subject matter jurisdiction raised by the City. Rather, the court found that PMC's motion for temporary injunction was denied because "[PMC's] right to relief is not clear and [PMC] failed to pursue other adequate remedies at law." The court further granted the City's motion for summary judgment, finding that the City "had the power to regulate access to its streets and that such regulatory power does apply to this situation." Finally, the court dismissed the action with prejudice. PMC's motion for new trial and alternate motion to alter or amend was denied.

On appeal, we noted that the City had raised the issues of standing and subject matter jurisdiction to the district court, but the court failed to address such issues. Based on the record before us, we concluded that the east side of 14th Street was outside of the parameters of PMC's 2009 lease, upon which PMC relied. Thus, it appeared from our record, that PMC lacked standing to file an action relating to property it apparently had no leasehold interest in, i.e., the vacated former 14th Street. We did acknowledge there was some indication in the record, via the August 2013 affidavit of a professional engineer for the State, that PMC leased from the State part of the block between "14th Street, 13th Street, Cass Street, and Chicago Street"; however, we did not know what part of that property was leased to PMC, the date of such lease, or any other information regarding the alleged lease. Because our record was somewhat unclear, we remanded the matter back to the district court to resolve the standing and jurisdictional issues.

*Proceedings on Remand.*

Following our remand, the City, on May 26, 2015, once again filed a motion for summary judgment seeking "summary judgment in their favor dismissing [PMC's] Petition with prejudice[.]"

On June 3, 2015, the district court allowed PMC to add the State as a party defendant. And on June 16, PMC filed a "supplemental petition for injunction," naming the State as a party defendant.

On June 25, 2015, PMC filed an "Answer to Defendant's Motion for Summary Judgment [and] Plaintiff's Cross Motion for Summary Judgment," seeking summary judgment in favor of PMC and against "the Defendants."

On July 1, 2015, the State filed its motion for summary judgment alleging that: PMC failed to state a claim upon which relief could be granted within the meaning of Neb. Rev. Stat. § 6-1112(b)(6); PMC does not have a lease on or any other property interest in the litigated property; and, as a result, PMC has no standing to bring the action. On July 8, PMC filed an "Answer to State of Nebraska Motion for Summary Judgment and Request for Dismissal," asking that the State's motion for summary judgment be dismissed.

On July 15, 2015, the district court held a hearing on the motions for summary judgment filed by all parties. Numerous exhibits were offered and received into evidence, many of which had previously been offered and received at the original hearing in November 2013. The new exhibits offered and received into evidence on remand were 17 (offered by the City), 18-20 (offered by the State), and 21-22 (offered by PMC). We summarize the content of those exhibits as follows.

Exhibit 17, is Timothy Weander's affidavit dated May 11, 2015. (Weander was the professional engineer for the State, referenced in our unpublished opinion, who gave the August 2013 affidavit indicating that PMC leased part of the block between "14th Street, 13th Street, Cass Street, and Chicago Street," from the State.) In his May 2015 affidavit, Weander stated that he is the District 2 Engineer for the State of Nebraska Department of Roads (NDOR). District 2 is that section of Nebraska that includes all of Douglas County, Nebraska, three other counties in eastern Nebraska, and part of Cass County, Nebraska. As District 2 Engineer, Weander's duties include "the overall supervision and administration of the highway construction and maintenance activities on the State Highway System within the boundaries of NDOR District 2." In his May 2015 affidavit, Weander sought to "clarify" his August 2013 affidavit by stating:

As part of the I-480 right-of-way, the State owns the following:

a. The block between 14th Street, 13th Street, Cass Street, and Chicago Street, underneath the I-480 bridge; and,

b. The Block between 15th Street, 14th Street, Cass Street, and Chicago Street, underneath the I-480 bridge; and,

c. The former 14th Street between Cass Street and Chicago Street, vacated by the City of Omaha . . .

Under a September 14, 2009 lease, the State leases the block between 15th Street, 14th Street, Cass Street, and Chicago Street to [PMC]. PMC does not have a leasehold from the

State for any property east of present 14th Street pursuant to that lease. The State does not have any written lease with PMC or any other entity for use of the block between present 14th Street, 13th Street, Cass Street, and Chicago Street.

In another affidavit dated June 30, 2015 (exhibit 18), Weander again stated his duties as District 2 Engineer, including "review and oversight of applications submitted by private or public entities seeking to perform work on the State's highway right-of-way or property used in conjunction with the State's highway right-of-way." Weander stated that he contacted "Frank Blankenau, the State's Property Management Supervisor in April and May 2013, to see if the State had leased any portion of vacated 14th Street and Block 40 and found that the State had not leased either parcel to any party." Weander had "personal knowledge that PMC did not submit an application for a permit to the State's District 2 Office, did not apply for a permit to construct improvements of any kind on vacated 14th Street, and did not apply for a permit to construct improvements of any kind on Block 40."

Exhibit 19 is the affidavit of Todd Wicken dated June 30, 2015. Wicken stated that he has been the Property Management Supervisor for the NDOR since November 2013. Prior to November 2013, he was a right-of-way agent for the Property Management Division for approximately 30 years. As Property Management Supervisor, Wicken's duties include "management and administration of all real property owned by [NDOR]," and "managing, administering and maintaining records relating to leasing certain State properties to tenants for private use." He further stated in relevant part as follows:

. . . .

11. On January[] 2014, Mr. [James] Monahan, writing on behalf of PMC, sent the State a proposed "addendum" to the 2009 lease (**Attachment B**) seeking to obtain a lease to vacated 14th Street.

. . . .

13. The proposed addendum to the 2009 lease sent to the State Property Management Section was never signed by the State and the unsigned original remains in the files I manage. A copy of the unsigned addendum to the 2009 lease proposed by PMC is attached and incorporated into this affidavit by reference **Attachment E**.

14. I have searched the files and records of the [NDOR] and have found that PMC has no lease to or property interest of any kind in the vacated 14th Street right-of-way or to Block 40 located east of said right-of-way in the City of Omaha.

15. . . . PMC does not have the written consent of the State to encroach upon or use vacated 14th Street or Block 40 east of vacated 14th Street.

. . . .

17. PMC has no written permit to perform work of any kind on the State right-of-way consisting of vacated 14th Street or Block 40.

18. Specifically, PMC has no written permit to connect a drive way to or pave vacated 14th Street or Block 40.

19. I have personal knowledge through my employment with the Right-of-Way Division of the [NDOR] that the State has not leased Block 40 of the City of Omaha to private parties in the past 30 years.

. . . .

(Emphasis in original.) Attachment B, referred to in paragraph 11 of Wicken's affidavit is a copy of the 2009 Airspace Lease Agreement, wherein the State leased to PMC the property described as "Block 41, between 14th and 15th Streets and Block 46, between 19th and 20th Streets, both between Cass and Chicago Streets in Omaha, Nebraska." And attachment E, referred to in paragraph 13 of Wicken's affidavit, is a copy of "Addendum No 1" signed by "James H. Monahan President" for PMC which reads:

This addendum No. 1 to the airspace lease for the parking lot dated for reference purposes only as September 14, 2009[,] is entered into by and between the [NDOR], Lessor and [PMC] . . . Lessee.

WHEREAS both parties agree to [a] rent increase to $3,000.00 per month beginning February 1, 2014, the new annual review day. . . .

WHEREAS both parties agree to the legal description of Block 46 Original City of Omaha between Cass and Chicago Streets, 19th to 20th Streets and *the corrected legal description to Lot 41 Original City of Omaha with all the vacated 14th* [S]*treet on the east side*, less lots 1 and 8 and less one half of lots 2 and 7 taken by the relocated 14th Street. This is between Cass and Chicago Street, 15th [S]treet to the east edge of the original 14th Street less the new 14th [S]treet.

. . . .

(Emphasis supplied.) The addendum in attachment E was not signed by the State.

Exhibit 20, is Wicken's "Second Affidavit" dated July 6, 2015. In paragraph 5 of the affidavit, Wicken states "[a] true and accurate copy of a cover letter for the 2009 lease executed by the parties and maintained in the files and records of the Property Management Section of the [NDOR] is attached and incorporated into this Affidavit by reference as **Attachment F**." (Emphasis in original.) Attachment F, is a letter dated September 10, 2009, on NDOR letterhead. PMC's name and address appear in the heading, and "Mr. Monahan" is named in the salutation. The letter, signed by Frank Blankenau (Blankenau) "Property Management Supervisor Right of Way Division," reads as follows:

Enclosed are two copies of our new proposed lease agreement with you. The error in the description has been corrected to read " [sic] between 14th and 15th Street. Please discard the documents we forwarded to you Tuesday and replace them with the correct copy. We are sorry for the error and trust this meets with your approval.

Exhibit 22 is the affidavit of James Monahan dated August 8, 2013. In his affidavit, Monahan states that he is a "minor shareholder in a family owned corporation and is the operating officer and attorney for said corporation." Since 1997, PMC has operated a parking lot in downtown Omaha "covering an entire block 15th to 14th Streets and Cass to Chicago Street, Block

41 Original City of Omaha" on land owned by the State. And the "current operating agreement" is dated September 14, 2009.

Exhibit 21 is Monahan's "Second Supplemental Affidavit" dated June 24, 2015. In that affidavit, Monahan states in relevant part as follows. The original lease between PMC and the State was dated on March 1, 1997, for "operation [of] a parking lot under the I-480 ramps 14th to 15tth [sic] Cass to Chicago [S]treets, Block 41 Original City of Omaha[.]" "On August 25, 2004[,] PMC signed another lease with the State of Nebraska for the operation of the same lot Cass to Chicago St[.] but now 13th to 15th [S]treets. (Ex. #9)." The "Ex. #9" attached to Monahan's affidavit is an "Agreement" dated August 25, 2004, between the NDOR and PMC for the operation of parking facilities located "in Block 41, between 13th and 15th Streets and Block 46, between 19th and 20th Streets, both between Cass and Chicago Streets in Omaha, Nebraska[.]" On September 14, 2009, PMC and the State entered "the current lease that changed the lease to 15th [S]treet to 14th [S]treet. (Ex. #12)." The "Ex. #12" attached to Monahan's affidavit is copy of the 2009 Airspace Lease Agreement, wherein the State leased to PMC the property described as "Block 41, between 14th and 15th Streets and Block 46, between 19th and 20th Streets, both between Cass and Chicago Streets in Omaha, Nebraska." In his affidavit, Monahan states:

> As you can see the lease still leases all of Block 41 to PMC and does not mention the loss of lots 8, 7, 1, or 2 nor the abandon [sic] 14th Street. Mr. Monahan questioned Frank Blankenau about this. He is the State Department of Roads attorney with whom he had dealt since 1997. Mr. Blankenau agreed that the lease was misleading, but since both PMC and the State knew PMC was now renting the vacated 14th [S]treet in lieu of the lost lots on Block 41, there would be no problem. He added that that was the best wording PMC was going to get. This [was] apparently due to pressure from the City.

> On February 15, 2012[,] Mr. Blankenau telephoned Mr. Monahan to tell him that the State was now going to make a parking lot of Block 40, Original City of Omaha. This is the area east of old 14th Street. Mr. Monahan sent him a letter the same day saying PMC would then pave where 14th [S]treet had been located to conjoin it with the State's new part. (Ex. #13) Mr. Blankenau expressed no objections.

> . . . PMC . . . did not pave old 14th Street until May 14, 2013. The next day the City barricaded the driveway.

> The same day Mr. Monahan spoke with Frank Blanenau [sic], who advised him that the State had dropped plans to do anything with Block 40, but expressed no objection to the paving of old 14th Street. Mr. Monahan sent him a letter the same day explaining the matter. (Ex. #14)

The "Ex #13" and "Ex. #14" referred to above were attached to Monahan's affidavit. "Ex. #13" was a letter from Monahan on behalf of PMC to Blankenau at the NDOR dated February 15, 2012. That letter read:

> After I spoke with you yesterday, I realized that we did not talk about the part of Block 41 that is now on the other side of 14th St. . . . Our lease grants PMC all of block 41 even if it is now split by 14th [S]treet.

I believe the only block the State can lease is block 40 to the east. If you wish I will get a title opinion from a title company to confirm this. I would like as soon as the weather breaks to pave that part of the lot and place [a] drive way in it so we can use that part for parking.

Please call me.

"Ex. #14" was a letter from Monahan on behalf of PMC to Blankenau at the NDOR dated May 15, 2013. That letter read:

Enclosed is a copy of the letter I sent you February 15, 2012[,] advising you that I intended to pave the east part of Block 41. I was waiting for you to request bids for Block 40 as you had told me you were going to do. Thus I did not arrange for $55,000.00 financing until this year.

The paving is now all but done and the curb now cut for the Drive. . . .

Also enclosed is a copy of our lease showing that we had a duty to the State to maintain the lot and the right to change the entrance and a copy of Neb[.] Rev. Stat. Section 14-1419(3) exempting the State of Nebraska from City of Omaha's power to regulate curbs, drives, etc.

This statute and our right to use it, the City of Omaha finds hard to accept.

(In Wicken's affidavit, exhibit 19, he states that he searched the files and records of the NDOR and found no copy or record of Blankenau or the Property Management Section having received the February 15, 2012, and May 15, 2013, letters attached to Monahan's second supplemental affidavit.)

In its order filed on August 20, 2015, the district court found "that there is no issue of material fact, and that the undisputed facts show that [PMC] does not have any interest in the subject property lying along the east side of new 14[th] Street in Omaha, Nebraska." The court said that PMC lacked standing, that the court lacked subject matter jurisdiction, and that the case should be dismissed with prejudice. The district court also said that even if PMC were found to have standing, the court would still find that the City and the State were entitled to summary judgment on the merits for the same reasons as cited in the court's earlier order granting summary judgment in this case. The district court "therefore, ordered, adjudged, and decreed" that the City and the State's motions for summary judgment were granted; PMC's "cross motion" for summary judgment was denied; and the action was dismissed with prejudice. PMC's motion for new trial was denied. PMC appeals.

ASSIGNMENTS OF ERROR

Reordered, PMC assigns that, on remand, the district court erred in (1) failing to find PMC leased abandoned 14th Street from the State; (2) failing to determine the terms of the lease between PMC and the State; and (3) failing to find the court had jurisdiction of the case.

PMC also assigns error to the original trial court ruling. Restated, PMC argues that in the original proceedings, the district court erred in: (1) failing to find the City violated PMC's due process rights by not giving PMC notice and a hearing before it blocked "the drive to its parking

lot"; (2) granting the City's motion for summary judgment; (3) denying PMC's request for injunctive relief; and (4) finding that the State could transfer jurisdiction of its property to the City by stipulation.

In their respective briefs, both the City and the State argue that PMC's assignments of error do not "match up" to the argument sections of its brief. The City and State refer to our unpublished opinion in this case wherein we addressed a similar problem with PMC's brief in that appeal and found that because PMC did not specifically comply with our briefing rules, we would only review the proceedings for plain error.

We agree with the City and the State that PMC's assignments of error do not "match up" to the corresponding argument sections of its brief. However, PMC's assignments of error and arguments are sufficient to address the two primary issues pertinent to this appeal: (1) the district court's findings that PMC did not have any interest in the disputed property and lacked standing, and (2) the district court's grant of summary judgment in favor of the City and the State. We will review the merits of PMC's appeal as to those issues.

However, we will not address the remaining assignments and arguments. To be considered by an appellate court, an error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *State of Florida v. Countrywide Truck Ins. Agency*, 294 Neb. 400, 883 N.W.2d 69 (2016). Additionally, our resolution of the two assigned errors we are addressing renders unnecessary the consideration of PMC's remaining arguments.

STANDARD OF REVIEW

Determination of a jurisdictional issue which does not involve a factual dispute is a matter of law which requires an appellate court to reach its conclusions independent from a trial court. *City of Springfield v. City of Papillion*, 294 Neb. 604, 883 N.W.2d 647 (2016).

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Strode v. City of Ashland*, 295 Neb. 44, 886 N.W.2d 293 (2016).

ANALYSIS

*Was PMC's Appeal Timely Filed?*

In its brief, the City contends that PMC's appeal was not timely filed. The district court's order granting summary judgment in favor of the City and the State was filed on August 20, 2015. On August 26, PMC filed a motion for "new trial" and that motion was denied on November 6. PMC then filed its notice of appeal on November 30. The City argues that PMC's motion for new trial following the entry of summary judgment "was not a proper motion for new trial under § 25-1142, which would toll the time for filing a notice of appeal." Brief for appellee City at 1. The City continues, stating "[a]s the time for filing a notice of appeal was not tolled by the filing of a motion for new trial, [PMC's] appeal of the grant of motions for summary judgment was not timely filed and this court does not have jurisdiction over this case." *Id.*

This same issue was addressed in the concurrence in *Hayes v. County of Thayer*, 21 Neb. App. 836, 844 N.W.2d 347 (2014). In *Hayes*, the district court entered a summary judgment order on February 24, 2012. Hayes filed a "'Motion for New Trial'" on March 2, stating specifically that it was being filed pursuant to Neb. Rev. Stat. § 25-1142 (Reissue 2008), "'for the reason that the verdict, report, or decision is not sustained by sufficient evidence or is contrary to law.'" See *Hayes*, 21 Neb. App. at 853, 844 N.W.2d at 60. The motion language quoted directly from § 25-1142, the new trial statute. Hayes then filed a "'Motion to Amend Complaint'" on April 4; on August 30, the motion to amend complaint and the motion for new trial were both overruled. Hayes appealed to this court on September 28. The concurrence noted that if the March 2 motion for new trial could not be converted to a motion to alter or amend the judgment, Hayes' appeal would not be timely. The concurrence stated as follows:

In *Allied Mut. Ins. Co. v. City of Lincoln*, 269 Neb. 631, 638, 694 N.W.2d 832, 838 (2005), the court stated, "As our recent jurisprudence makes clear, a motion purportedly seeking a new trial is not a proper motion to file after a motion for summary judgment is sustained and does not toll the time for filing a notice of appeal." . . . "However, a postjudgment motion must be reviewed based on the relief sought by the motion, not based upon the title of the motion. *When the statutory basis for a motion challenging a judgment on the merits is unclear,* the motion may be treated as a motion to alter or amend the judgment." *Id.* (emphasis supplied). In *Allied Mut. Ins. Co.,* the motion for new trial was based on an alleged "irregularity in the proceedings of the court, an insufficiency of evidence, and an error of law." *Id.* The *Allied Mut. Ins. Co.* court concluded, "This motion is similar to a motion for reconsideration, which is treated as a motion to alter or amend the judgment pursuant to Neb. Rev. Stat. § 25-1329 (Cum. Supp. 2002)," and, if filed within 10 days of the final order, tolls the time to file an appeal. 269 Neb. at 638, 694 N.W.2d at 838.

In this case, the motion for new trial cites specifically to the new trial statute, § 25-1142, and quotes directly from that statute. *Allied Mut. Ins. Co.* indicates that we may treat a motion for new trial as a motion to alter or amend the judgment "[w]hen the statutory basis for a motion challenging a judgment on the merits is unclear." 269 Neb. at 638, 694 N.W.2d at 838. In this case, the statutory basis is clearly stated--it cites to the new trial statute and quotes directly from that statute. Accordingly, *Allied Mut. Ins. Co.* seems to say that the motion for new trial in this case would not have effectively tolled the time for filing an appeal.

That said, however, it appears the appellate courts have been generous in allowing appeals to move forward regardless of the title or substance of a postjudgment motion. In a case decided just months before *Allied Mut. Ins. Co., supra,* the Nebraska Supreme Court addressed a motion for new trial filed after a motion to dismiss was sustained. The Supreme Court stated that the "motion for new trial was not a proper motion and would not toll the time for filing a notice of appeal." *Weeder v. Central Comm. College*, 269 Neb. 114, 119, 691 N.W.2d 508, 513 (2005). The Supreme Court went on to note that "to qualify for treatment as a motion to alter or amend the judgment, the motion must be filed no later than 10 days after the entry of judgment, as required under § 25-1329, and must seek

substantive alteration of the judgment." *Weeder*, 269 Neb. at 119, 691 N.W.2d at 513. The Supreme Court observed that the motion in that case contained the language "'reexamine its decision to dismiss . . . and reinstate the action as previously filed,'" and the Supreme Court concluded that the "language seeks substantive alteration of the judgment," "qualifies as one to alter or amend the judgment under § 25-1329, and tolled the time for filing a notice of appeal." *Weeder*, 269 Neb. at 120, 691 N.W.2d at 513. . . .

Other than the sentence emphasized from *Allied Mut. Ins. Co. v. City of Lincoln*, 269 Neb. 631, 694 N.W.2d 832 (2005), the Nebraska Supreme Court appears to direct us to convert an improperly filed postjudgment motion into a motion to alter or amend a judgment to allow for the tolling of the time to file an appeal. So although the language in *Allied Mut. Ins. Co.* gives me pause, I join with the majority in its apparent decision to allow the appeal to be decided on its merits rather than dismissing on jurisdictional grounds.

*Hayes v. County of Thayer*, 21 Neb. App. 836, 853-55, 844 N.W.2d 347, 360-61 (2014) (Bishop, Judge, concurring) (brackets in original).

Just like in *Hayes, supra*, PMC's motion for new trial cited specifically to the new trial statute, § 25-1142, and PMC stated that the district court's finding with respect to jurisdiction and standing was not supported by the evidence. As noted above, *Allied Mut. Ins. Co.* indicates that we may treat a motion for new trial as a motion to alter or amend the judgment "[w]hen the statutory basis for a motion challenging a judgment on the merits is unclear." 269 Neb. at 638, 694 N.W.2d at 838. In this case, the statutory basis is clearly stated because PMC cites to the new trial statute. Accordingly, *Allied Mut. Ins. Co.* seems to say that the motion for new trial in this case would not have effectively tolled the time for filing an appeal. However, as stated in the *Hayes* concurrence, other than the sentence emphasized from *Allied Mut. Ins. Co.*, the Nebraska Supreme Court appears to direct us to convert an improperly filed postjudgment motion into a motion to alter or amend a judgment to allow for the tolling of the time to file an appeal. Accordingly, we will not dismiss PMC's appeal as untimely.

*Does PMC Have Standing?*

In our previous unpublished memorandum opinion, we stated that pursuant to the September 2009 Airspace Lease Agreement, PMC had a leasehold interest in Block 41, west of 14th Street to 15th Street; and it would relate to the location of 14th Street as it existed at the time the 2009 lease was signed by PMC (because in 2009, PMC would have knowledge of where 14th Street was located at that time)," and that "it appears from our record, that PMC lacks standing to file an action relating to property they apparently had no leasehold interest in, i.e., the vacated property on the east side of new 14th Street." However, we did acknowledge there was some indication in the record, via the August 2013 affidavit of Weander, that PMC leased part of the block between "14th Street, 13th Street, Cass Street, and Chicago Street," from the State; but we did not know what part of that property was leased to PMC, the date of such lease, or any other information regarding the alleged lease. We remanded the matter back to the trial court for further proceedings so that it could resolve the standing and jurisdictional issues. On remand, the district

court determined that the undisputed facts show that PMC does not have any interest in the subject property lying along the east side of new 14th Street, and that PMC lacks standing.

While we agree with the district court that PMC does not have a leasehold interest in the vacated 14th Street property, we reach a different conclusion on the standing issue. Based on the new evidence submitted on remand, we conclude PMC had standing to challenge its right to use the vacated property in light of its belief that property was available to PMC as a substitute for the loss of Lots 1 and 8, and the partial loss of lots 2 and 7 from Block 41 when 14th Street was moved one-half block west. Further, the evidence suggested this belief was discussed with the State, and PMC invested resources to construct the driveway approach based upon that belief. PMC had a personal stake in the outcome of the controversy.

Under the doctrine of standing, a court may decline to determine merits of a legal claim because the party advancing it is not properly situated to be entitled to its judicial determination. *Central Neb. Pub. Power Dist. v. North Platte NRD*, 280 Neb. 533, 788 N.W.2d 252 (2010). The focus is on the party, not the claim itself. *Id*. And standing requires that a litigant have such a personal stake in the outcome of a controversy as to warrant invocation of a court's jurisdiction and justify exercise of the court's remedial powers on the litigant's behalf. *Id*. Thus, generally, a litigant must assert the litigant's own rights and interests, and cannot rest a claim on the legal rights or interests of third parties. *Id*. PMC was asserting its own rights and interests, and not those of another party. Accordingly, that portion of the district court's order concluding PMC had no standing is reversed and vacated.

*Summary Judgment*.

The district court granted the City's and the State's motions for summary judgment, concluding that they were "entitled to summary judgment in their favor on the merits, for the same reasons as cited in the Court's earlier order granting summary judgment in this case." In its prior order, the court granted summary judgment for the City (the State was not yet a party in the case), stating that the City "had the power to regulate access to its streets and that such regulatory power does apply to this situation."

We conclude summary judgment was appropriate in favor of the City and the State because when construing the evidence in the light most favorable to PMC, and giving PMC the benefit of all reasonable inferences deducible from the evidence, PMC cannot establish any interest in the disputed property. So while we affirm the district court's order granting summary judgment in favor of the City and the State, we do so for different reasons. A proper result will not be reversed merely because it was reached for a different reason. *Davis v. Davis*, 275 Neb. 944, 750 N.W.2d 696 (2008).

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Strode v. City of Ashland*, 295 Neb. 44, 886 N.W.2d 293 (2016). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id*. We now consider the evidence with this standard in mind.

In his May and June 2015 Affidavits, Weander, the District 2 Engineer for NDOR, stated that his duties include "the overall supervision and administration of the highway construction and maintenance activities on the State Highway System within the boundaries of NDOR District 2," and "review and oversight of applications submitted by private or public entities seeking to perform work on the State's highway right-of-way or property used in conjunction with the State's highway right-of-way." In his May 2015 Affidavit, Weander sought to clarify his August 2013 Affidavit by stating that "PMC does not have a leasehold from the State for any property east of present 14th Street pursuant to [the 2009] lease." (There is no dispute that the 2009 lease is the "current operating lease.") In his May 2015 Affidavit, Weander further stated that "the State does not have any written lease with PMC or any other entity for use of the block between present 14th Street, 13th Street, Cass Street, and Chicago Street." Additionally, in his June Affidavit, Weander stated he contacted "Blankenau, the State's Property Management Supervisor in April and May 2013, to see if the State had leased any portion of vacated 14th Street and Block 40 and found that the State had not leased either parcel to any party." Further, Weander had "personal knowledge that PMC did not submit an application for a permit to the State's District 2 Office, did not apply for a permit to construct improvements of any kind on vacated 14th Street, and did not apply for a permit to construct improvements of any kind on Block 40."

In his June 2015 Affidavit, Wicken, the current Property Management Supervisor for the NDOR and a prior right-of-way agent, stated his duties include "management and administration of all real property owned by [NDOR]," and "managing, administering and maintaining records relating to leasing certain State properties to tenants for private use." Wicken "searched the files and records of the [NDOR] and have found that PMC has no lease to or property interest of any kind in the vacated 14th Street right-of-way or to Block 40 located east of said right-of-way in the City of Omaha." Wicken also stated that "PMC does not have the written consent of the State to encroach upon or use vacated 14th Street or Block 40 east of vacated 14th Street"; "PMC has no written permit to perform work of any kind on the State right-of-way consisting of vacated 14th Street or Block 40"; and "PMC has no written permit to connect a drive way to or pave vacated 14th Street or Block 40." In fact, Wicken stated he had personal knowledge that though his employment with the Right-of-Way Division of the NDOR that the State has not leased Block 40 of the City of Omaha to private parties in the past 30 years.

PMC argues that the City "abandoned," rather than vacated 14th Street, and any attempt by the City to later vacate 14th Street was a nullity. Brief for appellant at 12. Whether the City abandoned or vacated 14th Street is of no consequence. Under either scenario, the State would own the land that was old 14th Street and the only interest PMC could have in such property would be as a lessee. And either action, abandonment or vacation, would have occurred well before PMC entered into the 2009 lease with the State, and it is the 2009 lease that controls.

The new evidence offered by PMC on remand was Monahan's August 2013 "Affidavit" and his June 2015 "Second Supplemental Affidavit." In those documents, Monahan states that PMC has operated a parking lot in downtown Omaha "covering an entire block 15th to 14th Streets and Cass to Chicago Street, Block 41 *Original* City of Omaha" on land owned by the State. (Emphasis supplied.) And the "current operating agreement" is dated September 14, 2009. In reference to the 2009 lease, Monahan states "[a]s you can see the lease still leases *all* of Block 41

to PMC and does not mention the loss of lots 8, 7, 1, or 2 nor the abandon [sic] 14th Street." (Emphasis supplied.) However, contrary to Monahan's assertions, the 2009 lease does not show that PMC leases "all of Block 41." Additionally, the 2009 lease does not refer to "Block 41 *Original* City of Omaha." (Emphasis supplied.) As stated previously, pursuant to the 2009 lease, the State leased to PMC the property described as "Block 41, *between* 14th and 15th Streets and Block 46, between 19th and 20th Streets, both between Cass and Chicago Streets in Omaha, Nebraska." (Emphasis supplied.) Accordingly, PMC had a leasehold interest in Block 41, west of 14th Street to 15th Street; and it would relate to the location of 14th Street as it existed at the time the 2009 lease was signed by PMC (because in 2009, PMC would have knowledge of where 14th Street was located at that time). PMC failed to provide proof of a written lease for the property to the east of new 14th Street; in fact, PMC seems to acknowledge that no such written lease exists. The lack of a written agreement regarding the subject property was evidenced by the "Addendum No 1" PMC sent to the State in 2014 seeking to add the subject property into the legal description of the lease. However, the addendum was not signed by the State.

Despite the lack of written documentation, PMC nevertheless contends that it did have a lease or other legal right to the subject property based on alleged conversations with Blankenau. In his "Second Supplemental Affidavit" Monahan stated that he questioned the fact that the 2009 lease did not mention the "abandon[ed] 14th Street," and said that when he spoke to Blankenau, Blankenau "agreed that the lease was misleading, but since both PMC and the State knew PMC was now renting the vacated 14th street in lieu of the lost lots on Block 41, there would be no problem." Such statements regarding the terms of the lease are parol evidence. The parol evidence rule renders ineffective proof of a prior or contemporaneous oral agreement which alters, varies, or contradicts the terms of a written agreement. *Sack Bros. v. Tri-Valley Co-op*, 260 Neb. 312, 616 N.W.2d 786 (2000). A lease agreement is to be construed as any other contract. *Johnson Lakes Dev. v. Central Neb. Pub. Power*, 254 Neb. 418, 576 N.W.2d 806 (1998). Unless a contract is ambiguous, parol evidence cannot be used to vary its terms. *Sack Bros., supra*. In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. *Johnson Lakes, supra*. A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Id*. The terms of the 2009 lease are clear and unambiguous. Thus, parol evidence is not allowed.

While PMC may have believed it was entitled to include the vacated 14th Street as part of its leased property as a replacement for the Block 41 lots displaced by the new 14th Street, its belief alone cannot overcome the plain language of the 2009 lease. And even though this belief may have been verbally acknowledged by the State, the non-ambiguous lease agreement must control. Additionally, to the extent PMC believed it had verbal consent from the State, separate and apart from the 2009 lease, to pave vacated 14th Street and make the curb cut, their argument fails because *written consent* was required. See Neb. Rev. Stat. § 39-1359(1) (Reissue 2016) which provides:

> The rights-of-way acquired by [NDOR] shall be held inviolate for state highway and departmental purposes and no physical or functional encroachments, structures, or uses shall be permitted within such right-of-way limits, except by *written consent* of the department or as otherwise provided in subsections (2) and (3) of this section.

- 14 -

(Emphasis supplied.) Subsections (2) and (3) relate to temporary use of the state highway system by a county, city, or village for special events, and do not apply to the instant case.

Even when considering the evidence in the light most favorable to PMC, and giving PMC the benefit of all reasonable inferences deducible from the evidence, PMC has not established any interest in the disputed property. The City and the State were entitled to judgment as a matter of law.

## CONCLUSION

The district court's August 20, 2015, order granting summary judgment to the City and the State (and denying PMC's motion for summary judgment) is affirmed for the reasons set forth in this opinion. However, the part of the court's order concluding PMC lacked standing is reversed and vacated.

AFFIRMED IN PART, AND IN PART
REVERSED AND VACATED.

ARTERBURN, Judge, participating on briefs.

- 15 -

APPENDIX A

To help visualize the locations at issue, we include two simplified maps (based upon maps in our record). The first map below represents the layout of the streets and blocks at issue before 14th Street was physically moved in 2001, and legally finalized in 2007.

| Cass Street | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| 15th | 4 | 3 | 2 | 1 | **14th Pre-2001/ 2007** ↑ **N** | 4 | 3 | 2 | 1 | 13th |
| | 5 | 6 | 7 | 8 | | 5 | 6 | 7 | 8 | |
| Chicago Street | | | | | | | | | | |

Block 41          Block 40

The next map represents the layout of the streets and blocks at issue after 14th Street was moved west onto parts of Block 41 in 2001, and legally finalized in 2007; this layout would have been applicable at the time of the 2009 lease upon which PMC relies in its claim of interest in this action. We have bolded the east side of the new 14th Street to represent the approximate location of where PMC installed the driveway at issue. Its precise location along that side of the street is unclear from our record.

| Cass Street | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 15th | 4 | 3 | 2 | (1) **New 14th Post 2001/ 2007** ↑ **N** (8) | Old 14th | 4 | 3 | 2 | 1 | 13th |
| | 5 | 6 | 7 | | | 5 | 6 | 7 | 8 | |
| Chicago Street | | | | | | | | | | | |

Block 41          Block 40